[No. 475.   August 24, 1892.]

## WILLIAM GARLAND, PLAINTIFF IN ERROR, v. SPERLING BROTHERS, DEFENDANTS IN ERROR.

GARNISHMENT—MORTGAGEE IN POSSESSION WITH OPTION TO PURCHASE.— Where a creditor, in pursuance of a written contract between himself and his debtors, defining their respective rights and obligations, took possession of the property of the debtors, as mortgagee in possession after condition broken, with the conceded right to purchase the same for a certain sum less the amount of the mortgage debt, interest, and expenses, on or before a certain date, the debtors obligating themselves to sell and convey to him the property on said terms, provided they had not previously paid to him the full amount of the debt due

him—Held: The contract fixed the relations of the parties, as mort-
gagor and mortgagee, and until there was a change of those relations,
by a foreclosure of the mortgage and purchase of the premises at a sale,
in case of a failure or refusal of the debtors to pay the debt or convey
the property as agreed, the creditor could not become a vendee in pos-
session, legally liable for the whole or any part of the purchase price of
the premises, so as to render him subject to be charged in a garnishee
proceeding under section 2159, Compiled Laws, 1884.   By this section
it is essential that the debt be in existence at the time of the service
of the garnishment process, owing and payable at the present time or
some future time, absolutely and unconditionally.

ERROR, from a judgment in favor of plaintiffs, to
the Fifth Judicial District Court, Socorro County.
Judgment reversed.

The facts are stated in the opinion of the court.

WARREN, FERGUSSON & BRUNER for plaintiff in
error.

Garnishment upon execution is authorized by the
statute, only when the prescribed efforts to find property
of the execution defendant have failed.   Section 2159,
Compiled Laws, 1884.

A garnishee can not, like a defendant, cure any
irregularity by appearance, or waive any requirement
necessary to give jurisdiction.   2 Wade on Attachment,
secs. 336–361.

The court should have sustained the garnishee's
motion to postpone the hearing.   Waples on Attach-
ment, p. 489; 2 Wade on Attachment, sec. 501.

In garnishment proceedings, if the plaintiff, in his
denial of the garnishee's answer, tenders an issue upon
a particular state of facts, the proofs will be limited to
such issue, and the plaintiff can recover upon no other
ground.   Freeze v. Cooperative C. Co., 67 Iowa, 24,
42 N. W. Rep. 583; Britt v. Bradshaw, 18 Ark. 530;
Twelve v. Lodano, 15 Ala. 732–734; Atkins v. Watson,
12 Tex. 199; Fowler v. Williamson, 52 Ala. 16; Kelly
v. Weymouth, 68 Me. 197.

Only legal, as distinguished from equitable, rights, are subject to garnishment.    A mortgagee in possession is not liable as garnishee, unless it be for excess of value of the property. Waples on Attach., pp. 204, 348; Dieter v. Smith, 70 Ill. 168; Jones on Chattel Mortgages, p. 557; 2 Wade on Attach., secs. 329, 333, 348; Drake on Attach., p. 539, and cases cited; Webster v. Steele, 75 Ill. 544; Teague v. Le Grand, 7 Am. Rep. 64; Williams v. Young, 46 Iowa, 140; Caldwell v. Coates, 78 Pa. St. 312; Nesbit v. Ware, 30 Ala. 68; Curtis v. Alvord, 45 Conn. 569; Waples on Attach., p. 197.

Neither equity nor law will compel a vendee to take a defective title; and the vendor must show ability and offer to convey good title.    Thompson v. Carpenter, 45 Am. Dec. 681; Rawle on Cov. 430, et seq.; Dwight v. Cutler, 64 Am. Dec. 110; Greenwood v. Ligon, 48 Id. 776; Sudgen on Vendors [7 Am. Ed.], 701; Feemster v. May, 53 Am. Dec. 84, and note; Gano v. Renshaw, 44 Id. 152, and note, 156.

The attaching creditor can acquire no greater rights against the garnishee than the defendant had; and the garnishee's rights under preexisting contracts remain unaffected by the garnishment. Drake on Attach. 245, 454, 457, 458, 519. Waples on Attach. 195-197; Wade on Attach. 440-444; Frem. on Executions, secs. 416, 417; 1 Jones on Mortgages, sec. 711; 8 Eng. and Am. Encyclopedia of Law, 1147, 1189; 1 Id. 914; Mathis v. Clark, 12 Am. Dec. 688; Webb v. Miller, 47 Id. 190, and note.

WILLIAM B. CHILDERS for defendants in error.

O'BRIEN, C. J.—On the twenty-fifth of May, 1888, in the district court for Socorro county, in an action at law wherein the defendants in error were plaintiffs and the Shorthorn Cattle Company was defendant, the plaintiffs recovered judgment against the defendant company

for the sum of $2,646.98, besides the costs of suit. In aid of the execution issued upon this judgment, garnishee summons was served upon William Garland. The sheriff made due service of the writ upon the garnishee, but he did not, however, certify in his return that he had demanded payment of the judgment debtor, or that he had requested said debtor to show him sufficient property to satisfy the same; nor did he state therein that he was unable to find sufficient property to discharge said judgment. At the return term of the writ of garnishment, the plaintiffs filed interrogatories as to whether at or after the service of garnishment summons upon him he had in his possession any land, tenements, goods, chattels, moneys, choses in action, credits, or effects of the defendant company, and also whether he was at such time or since in any manner indebted to the defendant. The garnishee answered that he was in possession of certain property belonging to the defendant as pledgee or bailee to secure a mortgage indebtedness, and that the same was insufficient to satisfy such indebtedness. He further denied that he was indebted to defendant in any sum whatever. Plaintiffs, in reply to said answer, denied all the allegations thereof, and specifically alleged that, in pursuance of a written contract, entered into between him and the judgment debtor, the garnishee had agreed that he would, on or before nine months after the first day of November, 1887, to wit, on the first day of August, 1888, purchase a large amount of property, consisting of cattle, horses, ranch property, live stock, and real estate, particularly described in the said contract, for the sum of $100,000, and agreed to take possession of said property, and keep and maintain the same, and pay all the expenses for the care and management thereof, from the first day of November, 1887. Plaintiffs further allege that on the twenty-seventh day of August, 1888, the defendant company, in pursuance of

the contract, sold and conveyed to said garnishee all of said property, and a large amount of other property belonging to said cattle company, for the sum of $100,000; that the greater part of said purchase money was paid to the defendant company by the release of certain trust deeds upon the property described in said contract, but that the sum of $10,000 was withheld by the said garnishee, and had not been paid, and then remained due from said garnishee to the defendant as part of the purchase price of said property; and prayed judgment against the garnishee. The case was tried to a jury upon these interrogatories, answers, denials, and allegations. The garnishment summons was served July 17, 1888. On the fourth day of August, 1888, after the service of the garnishment summons, the parties entered into a new contract, varying the terms of the contract of October 20, 1887, as to the price to be paid for the property. In pursuance of the contract so modified, the parties of the first part made and delivered to Garland a deed of conveyance, dated August 27, 1888, of the premises aforesaid, as the same were described in certain trust deeds.

When the case was called for trial, the garnishee, among other things, moved the court to discharge him, for the reason that the summons in garnishment had been illegally issued and served, which motion was denied. Plaintiffs then read in evidence the deposition of R. J. Bishop. They then offered in evidence the contract hereinbefore referred to, dated October 20, 1887, and the three deeds of trust therein described. He then introduced a deed of conveyance dated August 27, 1888, conveying all of said mortgaged property, and releasing the equity of redemptiom therein, to said Garland. He then called as a witness William B. Childers, Esq., who testified to a conversation had with garnishee a short time before August 1, 1888, wherein Garland, on the assumption that the cattle company

complied with its contract of October 20, 1887, admitted
that he would owe the company something over $4,000.
Plaintiffs resting, the court denied garnishee's motion
to find the issues for the garnishee.   Thereupon Wil-
liam Garland testified in his own behalf substantially
as follows:    That on August 1, 1888, the amount due
him under the mortgage and contract of October 20,
1887, was $95,365.11; that he spoke to Hall and Bishop
in their individual capacities, as well as representatives
of the Shorthorn Cattle Company, at said time, about
the title to part of the land in question being imperfect
and defective, and then made them an offer to deduct
$10,000 of the indebtedness due him, to take back the
property, and pay him the balance on easy terms.
The court sustained an objection to this evidence.
Thereupon the garnishee offered to show that, at the
time of the execution of the several instruments herein-
before referred to, it was represented by the plaintiffs
that they included all the property of the several parties
of the first part, and were a part of the ranch property
included in the several instruments, and that upon the
faith of that representation garnishee was induced to
accept these several securities.   The court excluded the
same, upon the ground that the garnishee could not
question his liability to respond for the property pur-
chased by him on the ground that his deed did not
convey all of it.   The garnishee then offered in evidence
a written contract dated August 4, 1888, for the purpose
of showing the contract dated October 20, 1887, had
been modified as to the price to be paid for the property,
to which the plaintiff objected, on the ground that the
garnishee could not, as against the plaintiff, reduce or
change in any manner the purchase price after the serv-
ice of garnishment summons.   The court sustained
the objection.   The court also refused to allow the gar-
nishee to show what was said or done in reference to
the contract of October 20, 1887, by and between the

parties thereto in August, 1888, or after the period of nine months specified therein, or any agreement made between the said parties, changing the terms of the contract of October 20, on the ground that the garnishee could not make any new contract after the rights of plaintiffs were fixed by service of the garnishment process.   The court also withdrew from the jury garnishee's testimony that he had possession of the property from October 20, 1887, to August 1, 1888, as mortgagee, in accordance with the terms of the October contract.   The court excluded all offers on the part of the garnishee tending to show any change in the relation of the parties, or any change in the terms of the original contract.   Thereupon the jury, under the direction of the court, found the issues for the plaintiff, and that the garnishee was indebted to the defendant company in the sum of $3,123.43.   Garnishee, upon nine alleged grounds of error, moved the court to set aside the verdict and for a new trial, which motion being overruled, the garnishee brought the cause to this court upon writ of error.

William Garland, plaintiff in error, was garnished under an execution issued in favor of Sperling Brothers against the Shorthorn Cattle Company, in pursuance of the provisions of section 2159, Compiled Laws, 1884. The only question that could be tried on the garnishee's answers to the judgment creditor's interrogatories was the existence of a money indebtedness due and payable, or to become due and payable, from the garnishee to the judgment debtor.   Perea v. Col. Nat. Bank, 27 Pac. Rep. 322.   On the trial of the issues between the judgment creditor and the garnishee, the contract of October 20, 1887, was offered and received as primary evidence of an inchoate, legal indebtedness that matured and became absolute on and after August 1, 1888.   If such were the legal effect of this instrument, the court below was correct in holding that the garnishee could

not be permitted to show any change voluntarily made by the parties to the contract, affecting the rights of the defendants in error after the service of the garnishment process. Upon the same theory, the court was equally correct in denying to garnishee the right to show that the deed dated August 27, 1888, conveying to Garland the property in question, was not made in pursuance of the original contract, but was made under a new arrangement, evidenced by the agreement of August 4, 1888, for a consideration of $10,000 less in amount than the price fixed by the contract of October 20, 1887.

It follows that the chief, if not the only, question properly presented for determination in this proceeding is, was Garland legally indebted to the cattle company under the contract of October 20 at the time that the garnishment summons was sued out and served upon him? If he was, the court's rulings were consistent and correct; if he was not, the defendants in error were erroneously allowed to introduce testimony resulting in the verdict against him. We hold that the contract did not create the legal relation of debtor and creditor between Garland and the company. For some time prior to October 20, 1887, the company owed Garland, on advanced loans, more than $80,000. On the last mentioned date, such indebtedness remaining wholly unpaid, Garland and the company made a written contract, defining their respective rights and obligations. Clearly, before the execution of this contract, Garland was the creditor and the cattle company the debtor. Did the contract invert such relation? By its terms does it appear that the Shorthorn Cattle Company assumed the obligations of vendor and creditor, and the plaintiff in error those of vendee and debtor, and that such obligations became absolute on the first day of August, 1888? Pursuant to the con-

GARNISHMENT: mortgagee in possession with option to purchase.

tract, Garland took possession of the property on November 1, 1887, as mortgagee in possession after condition broken, with the conceded right to purchase the same for $100,000, less the mortgage debt, interest, and expenses, on or before August 1, 1888; the cattle company binding itself to sell, and by good and sufficient conveyances, and other assurances of title, to convey, to Garland all such property on said terms: provided, however, that it had not previously paid Garland the full amount of the debt due him. It is clear · that by the terms of this contract Garland remained creditor and the cattle company the debtor up to the first day of August. ·Did the contract, ex proprio vigore, after that date, not only convert Garland into a legal debtor,—a vendee, instead of a mortgagee in possession,—but did it also possess such retroactive properties as to create the relation of debtor and creditor from its inception? Unless we give it this effect, the position taken by the defendants in error is untenable. Whilst this contract could not execute its own provisions, it fixed the relations of the parties, those of mortgagor and mortgagee, and afforded the garnishee the means of changing these relations by a foreclosure of the mortgage and the purchase of the premises at the sale, in case the company was unable or unwilling to pay the debt or voluntarily convey the property. In no other way, under the contract, could Garland become vendee in possession, legally liable for the whole or any part of the purchase price of the premises.

In justice to the learned judge who tried the cause in the court below, it must be conceded that the doctrine here held was not pressed or presented by counsel on either side in the light required by the statutory provisions regulating such proceedings. Section 2159 of the Compiled Laws of 1884 says: "When any execution shall be placed in the hands of any

officer for collection, he shall call upon the defendant for payment thereof, or to show him sufficient goods, chattels, effects, and lands whereof the same may be satisfied; and, if the officer fail to find property sufficient to make the same, he shall notify all persons who may be indebted to said defendant not to pay said defendant, but to appear before the court out of which said execution issued, and make true answers on oath concerning his indebtedness, and the like proceedings shall be had as in cases of garnishees summoned in suits originating by attachments." By the obvious force of this section, the person garnished must be indebted to the defendant before process can issue. A claim moral or equitable in its nature is not sufficient. The indebtedness must be legal, as distinguished from an equitable demand. It is essential under this section that the debt be in existence at the time of the serving of the garnishment summons, absolutely and unconditionally owing and payable at the present or some future time. If it is a legal debt, it must be enforcible in an action at law, when payable, against the debtor. Its payment must not be made dependent upon the existence or performance of contractual conditions. Such appear to be the principles regulating garnishment proceedings in jurisdictions having statutory provisions similar to our own. Hopson v. Dinan, 48 Mich. 612; Edney v. Willis, 36 N. W. Rep. (Neb.) 300; Coburn v. Ansart, 3 Mass. 319; Scales v. Southern Hotel, 37 Mo. 520; Weil v. Tyler, 43 Mo. 581. "If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached; for that can not properly be called a debt which is not certainly and at all events payable, either at the present or some future period." Drake, Attach., sec. 551. By the express terms of this contract, the cattle company had

the legal right at any time from the date thereof until August 1, 1888, to redeem by paying Garland the amount due on his notes. In the event of the payment, the latter could never become the debtor of the company. Plaintiff offered other testimony, it is true, for the purpose of showing the existence of the indebtedness between the garnishee and the cattle company, but it had exclusive reference to rights and obligations accruing or assumed under the contract of October, 1887. If, as we hold, the debt mentioned must be absolutely and unconditionally payable at the present or some time in the future, and must be so, under the section stated, when the process is served upon the garnishee, it follows that the court acquired no jurisdiction of the subject-matter, and should have discharged the garnishee and dismissed the proceedings.

The foregoing views sufficiently dispose of the grounds of error assigned by the garnishee in this court, with the exception of the point suggested by him in the court below, that it did not appear by the sheriff's return nor otherwise that that officer had ever made the demands required by section 2159 before applying for and serving the garnishment summons. There can be no doubt that a substantial compliance with all the requirements of the statute in that respect is essential to jurisdiction. A third party, in no wise indebted to or interested in the demands of the judgment creditor, should not be harassed by being compelled to participate in other people's lawsuits, unless by virtue of a statute authorizing such intervention. The record in this case does not show that the sheriff ever demanded payment of the judgment debt from the judgment debtor, nor does it show that he made any demand at all, before applying for the garnishment summons. The officer, it is true, may have done so without making the proper return. In the absence of such return, can the presumption be indulged against third parties,

strangers to the record, that the sheriff did what the law required him to do, before serving the process upon the garnishee? If it can not, the summons issued without authority. Ordinarily, in other jurisdictions, instead of the official demands required of the sheriff by section 2159, the right to this remedy must appear by affidavit, and such affidavit must be filed before process issues, or the court will acquire no jurisdiction. Hinkley v. St. Anthony Falls, etc., 9 Minn. 55; Chanute v. Martin, 25 Ill. 63; Steen v. Norton, 45 Wis. 412, 415. It is hardly open to question that in garnishment proceedings the plaintiff can not subject the third party to the jurisdiction of the court unless he has complied with the statutory prerequisites. Stickley v. Little, 29 Ill. 313; Black v. Busman, 3 Minn. 360.

Without deciding the point, for the reason that it was not properly raised in the court below, and is not necessary to the proper disposition of the cause at bar, we are of the opinion that, if the garnishment summons is issued before the sheriff has complied with the requirements of the statute in this respect, the same is void. We are further of the opinion that the evidence of such compliance should appear of record. The sheriff is not entitled to the presumption claimed when jurisdiction is dependent upon the performance of the duty.

For the errors pointed out, the order denying the motion for a new trial, etc., will be reversed, the verdict set aside, and the cause remanded for further proceedings, in accordance with the views herein expressed.

SEEDS, LEE, and McFIE, JJ., concur.