2004-NMCA-095

95 P.3d 1063

**Stella R. KIRBY, Plaintiff–Appellant,**

**v.**

**TAD RESOURCES INTERNATIONAL, INC., a/k/a Tad Technical Services Corporation, a/k/a Adecco–Tad Resources International, a/k/a Adecco Employment Services, Inc., a/k/a Adecco SA, a/k/a Adecco International, Defendants/Third–Party Plaintiffs–Appellees,**

**v.**

**The Guardian Life Insurance Company Of America, Third–Party Defendant–Appellee.**

No. 23,930.

Court of Appeals of New Mexico.

June 16, 2004.

Earl Mettler, Mettler & LeCuyer, P.C., Albuquerque, for Appellant.

Matthew T. Byers, McCormick, Caraway, Tabor & Riley, L.L.P., Carlsbad, for Appellee Adecco Employment Services, Inc.

Donald A. DeCandia, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellee The Guardian Life Insurance Company of America.

## OPINION

SUTIN, Judge.

{1} Plaintiff was denied long-term disability benefits under her employer's group insurance policy. The gut issue is whether, under ERISA, she can seek judgment against the ERISA plan itself as an entity when the disability insurer in control of administration of the plan has been dismissed on res judicata grounds and is not a party and Plaintiff cannot directly obtain a judgment against the insurer. The district court held she could not. We reverse.

**BACKGROUND**

{2} Plaintiff Stella Kirby sought damages stemming from the denial by Guardian Life Insurance Company of America (Guardian) of her claim for long-term disability benefits under a group insurance policy purchased by her employer TAD Resources International, Inc., whose successor-in-interest is Adecco SA (collectively referred to as Employer). Plaintiff had received disability benefit payments for about one year, after which payments ceased. Her initial complaint, filed in April 1999, named Guardian and Employer and asserted seven counts under state law for breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud, negligent misrepresentation, unreasonable delay, violations of the Unfair Insurance Practices Act, and violations of the Unfair Practices Act.

{3} Before any responsive pleading was filed, Plaintiff filed an amended complaint that varied from the original complaint only by the addition of some minor language and by reordering some of the counts. Guardian filed a motion to dismiss the amended complaint on the ground Plaintiff's state law claims were preempted by the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461 (1974, as amended through 2004) (ERISA). The district court dismissed the amended complaint on preemption grounds, but granted Plaintiff fifteen days to file a second amended complaint seeking recovery under ERISA. We refer to the court's order of dismissal of the amended complaint as "the preemption order of dismissal" as we proceed through the procedural morass that followed.

{4} Plaintiff filed a second amended complaint in December 1999, in which she kept Employer as a defendant but dropped Guardian as a defendant. The structure of the second amended complaint was different than that of the first in that, in attempted compliance with the preemption order of dismissal, the second amended complaint alleged that the action was brought "in part" under provisions of ERISA and asserted a claim for failure to pay benefits. However, the second amended complaint also asserted state law claims for fraud and negligent misrepresentation based on allegations that Employer erroneously misled Plaintiff into believing that her medical insurance would continue as a converted policy if she paid Employer a premium for the coverage.

{5} Nearly a year after Plaintiff filed the second amended complaint, the district court granted Plaintiff's attorney's motion to withdraw as counsel based on irreconcilable differences. Thereafter, Plaintiff's new attorney and Employer's attorney filed a stipulation indicating that Plaintiff would file a third amended complaint based on ERISA. Based on the stipulation, the district court entered an order dismissing the second amended complaint without prejudice and ordering Plaintiff to file a third amended complaint.

{6} Plaintiff's third amended complaint, filed in March 2001, asserted, as her sole claim, a claim under 29 U.S.C.

§ 1132(a)(1)(B) for wrongful denial of benefits. The third amended complaint continued to name Employer as a defendant, but also added the disability plan, naming Long–Term Disability Plan of Tad Resources International, Inc. (the Plan) as a separate defendant. In addition, the third amended complaint once again included Guardian as a defendant. Guardian responded with a motion to dismiss asserting that the claims in the third amended complaint were barred by the doctrine of res judicata related to the preemption order of dismissal. Guardian also asserted that the district court lost jurisdiction to allow Plaintiff to file a third amended complaint against Guardian because Plaintiff never appealed the preemption order of dismissal. On September 12, 2001, Plaintiff filed a motion requesting the court to reconsider an apparently verbal determination by the court granting Guardian's motion to dismiss the third amended complaint. On September 20, 2001, the court, based on res judicata, entered an order granting Guardian's motion to dismiss the third amended complaint as to Guardian, which we will refer to as "the first res judicata order of dismissal." On October 24, 2001, Plaintiff withdrew her motion to reconsider.

{7}  In January 2002, Plaintiff filed a motion to reverse Guardian's administrative denial of benefits under the Plan on the grounds it was erroneous, without support in the administrative record, and arbitrary and capricious. Plaintiff asserted that she had a right to recover the benefits against the Plan and that a claims processor such as Guardian was not a necessary party for Plaintiff to obtain that relief. She sought a judgment ordering the Plan to pay disability benefits. Employer responded, asserting, among other things, that it was not a proper party defendant, that the court lacked jurisdiction, and that Plaintiff failed to exhaust administrative remedies.

{8}  Meanwhile, using an alias summons issued in February 2002 Plaintiff re-served Guardian "as administrator of Adecco/TAD Technical Long–Term Disability Insurance Plan, No. G–290956." She also served summons and alias summons on the various legal incarnations of Employer in its capacity as administrator of the Plan, as well as on the United States Department of Labor. Thereafter, in April 2002 the court permitted Employer to amend its answer to include a third-party complaint against Guardian seeking indemnification if Employer were eventually ordered to pay benefits to Plaintiff. The court also remanded the case to the Plan and Employer for a period of sixty days to allow for the completion of the administrative appeal process that the court concluded had been started but not finished when Plaintiff's benefits were first denied. Consideration of Plaintiff's motion to reverse Guardian's denial of benefits was deferred pending this remand.

{9}  While the case was on remand, Guardian filed a second motion to dismiss the third amended complaint in response to having been served in its capacity as the Plan administrator. Guardian reiterated previous arguments it had made in its first motion to dismiss the third amended complaint, and added the grounds that Plaintiff's failure to appeal the first res judicata order of dismissal precluded her from trying to bring Guardian back into the lawsuit and that, even if Plaintiff could bring Guardian back into the lawsuit as the Plan administrator, Plaintiff's claims would nevertheless be precluded by collateral estoppel. Plaintiff responded that re-service on Guardian was made only to perfect service on the Plan, not to re-assert previously dismissed claims against Guardian. Guardian's reply indicated that, whatever Plaintiff's characterization of its procedural activity, Plaintiff was attempting in effect to recover from Guardian, a claim and recovery precluded under res judicata and collateral estoppel. The district court thereafter, in July 2002, entered an order ruling that "Plaintiff's claims against Guardian in the Third Amended Complaint are barred by res judicata and collateral estoppel." We refer to this second dismissal of the third amended complaint granted in Guardian's favor as "the second res judicata order of dismissal."

{10}  The parties then, during September through December 2002, filed a series of competing motions in an attempt to bring the case to a close. Guardian filed a motion seeking dismissal or summary judgment

against Employer on Employer's third-party complaint against Guardian. Employer filed a motion for summary judgment against Plaintiff on the theory that Plaintiff could not recover benefits from Employer because Employer was the wrong party to sue under ERISA. Plaintiff filed a motion for default judgment or summary judgment against the Plan. In her motion, Plaintiff asserted that a default judgment was proper because no answer had been filed on behalf of the Plan; or, alternatively, no factual dispute existed as to whether Plaintiff qualified for benefits under the Plan and she was entitled to benefits as a matter of law. Guardian took the position that Plaintiff's motion "should be denied because Guardian is the only party from whom Plaintiff would have been entitled to obtain benefits, and Plaintiff's claims against Guardian have long since been dismissed." Plaintiff replied that "while res judicata insulates Guardian from a direct action by Plaintiff in this case, it does not affect Guardian's ultimate liability as insurer of the Plan." The record indicates nothing resulted from the administrative proceeding on remand.

{11} In February 2003, following a hearing on all outstanding motions, the district court issued a letter ruling analyzing the issues and announcing that it was dismissing Plaintiff's third amended complaint as to all parties. The court prefaced its letter ruling by stating that Plaintiff's "decision not to include [Guardian] as a defendant in her Second Amended Complaint is fatal to her cause of action for ERISA benefits." The court acknowledged the "complex and confusing" nature of ERISA law and noted a split of authority concerning what entity is the proper defendant in an ERISA action. Further, the court stated that in light of its prior decisions granting Guardian's motions to dismiss, the court could not grant any of Plaintiff's various motions seeking to establish her right to benefits under the Plan, stating:

> ERISA provides that an employee benefit plan may sue or be sued as an entity, and that any money judgment against an employee benefit plan shall be enforceable only against the plan as an entity. In reality there is no such entity. Guardian has full discretionary authority over benefit claims, and by virtue of failing to assert

any claims against Guardian in her Second Amended Complaint, [Plaintiff] is unable to obtain benefits from Guardian. I decline to enter a judgment against the Plan when [Plaintiff] is precluded from recovering against the party that funds the Plan.

(Citation omitted.) Further, the court concluded that summary judgment in favor of Employer was appropriate "[b]ecause Guardian had sole discretion to determine and pay benefits under the long-term disability plan." The court implemented its letter decision with a series of orders. Plaintiff appeals from three of the orders, namely, (1) an order denying Plaintiff's motion for default or summary judgment against the Plan, (2) an order denying Plaintiff's motion to reverse the denial of ERISA plan benefits, and (3) an order granting summary judgment in favor of Employer.

{12} Plaintiff does not appeal from or otherwise attack on appeal the dismissal of her ERISA claim against Guardian. Her points on appeal are: (1) the Plan, being an ERISA plan, is the proper defendant in a claim for benefits under §§ 1132(a)(1)(B), 1132(d)(1), and 1132(d)(2); (2) Plaintiff was entitled to a default or summary judgment against the Plan; (3) dismissal of Guardian did not preclude Plaintiff from proceeding to judgment against the Plan; and (4) the district court erred in dismissing Employer, the Plan administrator.

## DISCUSSION

### I. Whether Plaintiff Can Pursue a Judgment Against the Plan

{13} Whether Plaintiff can pursue a judgment against the Plan ultimately depends on whether the dismissal of Guardian precludes Plaintiff on res judicata or collateral estoppel grounds from obtaining a judgment against the Plan. The theory under which Guardian asserts preclusion is that, for the purpose of benefits, Guardian *is* the Plan, and that the Plan is simply a nominal party because a judgment against the Plan would in effect be a judgment against Guardian, in that Plaintiff cannot recover any benefits except from Guardian. Therefore, according to Guardian, its dismissal, being final, with prejudice, and unattackable, precludes Plaintiff

from proceeding to judgment against the Plan even if ERISA were otherwise to permit a judgment against the Plan as an entity.

### A. Standard of Review

{14} We review summary judgment de novo when the material facts are undisputed. *Palmer v. St. Joseph Healthcare P.S.O., Inc.,* 2003–NMCA–118, ¶ 17, 134 N.M. 405, 77 P.3d 560. "We interpret the intention of Congress and the meaning of its statutes de novo." *Id.* We start with what ERISA provides.

### B. ERISA

{15} Section 1132(a) of ERISA authorizes eight separate claims to enforce different rights under the statute. Plaintiff's third amended complaint asserted a § 1132(a)(1)(B) claim for benefits, which we refer to as Plaintiff's "benefits claim." Section 1132(a)(1)(B) reads:

> A civil action may be brought—(1) by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

Plaintiff's benefits claim was assertable in state court, pursuant to § 1132(e)(1), which states that, except for actions under subsection (a)(1)(B), the federal district court has exclusive jurisdiction of civil actions brought by a participant or beneficiary, and which provides for concurrent federal and state jurisdiction of claims under subsection (a)(1)(B). There exists no issue on appeal regarding the propriety of state district court subject matter jurisdiction.

{16} In regard to Plaintiff's benefits claim against the Plan, we examine ERISA § 1132(d) in addition to § 1132(a)(1)(B). Section 1132(d), titled "Status of employee benefit plan as entity," reads, in part:

> (1) An employee benefit plan may sue or be sued under this subchapter as an entity. ...
>
> (2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable

against any other person unless liability against such person is established in his individual capacity under this subchapter.

### C. The Nature of the Plan

{17} Under 29 U.S.C. § 1003(a)(1), "[w]ith few exceptions not relevant here, ERISA applies to all employee benefit plans that are established or maintained by an employer 'engaged in commerce or in any industry or activity affecting commerce.'" *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 417 (4th Cir.1993) (citation omitted). The plan must be established pursuant to a written instrument. 29 U.S.C. § 1102(a)(1). "[T]he establishment of a plan may be accomplished through the purchase of insurance." *Custer,* 12 F.3d at 417; *see* 29 U.S.C. § 1002(1). Long-term disability insurance is a type of insurance that can accomplish the establishment of an ERISA welfare plan. 29 U.S.C. § 1002(1)(A). Numerous ERISA cases involve such plans. *See, e.g., Layes v. Mead Corp.,* 132 F.3d 1246, 1249 (8th Cir. 1998) (involving § 1132(a)(1)(B) claim for denial of benefits against insurer having discretionary authority to administer and interpret long-term disability plan). An employer may delegate fiduciary responsibilities to an insurer in administering a plan. *See Wojciechowski v. Metro. Life Ins. Co.,* 75 F.Supp.2d 256, 261 (S.D.N.Y.1999).

{18} Employer purchased a group plan offered by Guardian that primarily included basic term life and long-term disability insurance. This group plan defines "Plan" as meaning "the Guardian group plan purchased by the employer." The Certificate of Coverage provided to employees insured by the group plan defines the group plan to mean "the *Guardian* group *plan* purchased by your *employer*." Provisions of a "master group policy" (the policy) apply to the group plan of insurance. More particularly, the policy's long-term disability income insurance provisions apply to the "Guardian group long term disability income insurance plan the employer bought."

{19} Under ERISA, every benefit plan "shall provide for one or more named fiduciaries who ... shall have authority to control and manage the operation and administration

of the plan." 29 U.S.C. § 1102(a)(1). The "named fiduciary" is the one "named in the plan instrument." 29 U.S.C. § 1102(a)(2). A fiduciary is defined in ERISA as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

{20} The policy contains a Statement of Erisa Rights, which states, among other things, "ERISA imposes duties upon the people, called 'fiduciaries,' who are responsible for the operation of the employee benefit plan. They have a duty to operate the plan prudently and in the interest of plan participants and beneficiaries." Under the policy and the Plan, a claim with respect to long-term disability plan benefits is made through a "Claims Procedure" pursuant to which the "Plan Administrator" furnishes a claim form to the claimant and submits the completed form to Guardian. Guardian is named as "the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." If Guardian denies the claim, Guardian provides to the Plan Administrator, for delivery to the claimant, a notice setting forth specific information relating to the denial. The Claims Procedure states that these "procedures are required under the provisions of ERISA."

{21} In its disposition letter, the district court stated,

[t]here is no dispute that: ... [Employer] provided an employee benefit plan to its employees that included long-term disability benefits through Guardian. [Employer] was both the plan sponsor and plan administrator, while Guardian was the claims fiduciary. [Employer] had no discretionary control over the outcome of [Plaintiff's] request for long-term disability benefits. Guardian had the sole discretion under the plan to make decisions about which employees would qualify for long-term disability benefits.

No party disputes this statement. While acknowledging that a benefit plan may be sued as an entity under § 1132(d)(1) and also acknowledging the enforceability of any money judgment only against the plan as an entity under § 1132(d)(2), the court determined that, "[i]n reality there is no such entity" because Plaintiff was "precluded from recovering against the party [Guardian] that funds the Plan."

## D. Whether Plaintiff Can Sue the Plan

### 1. The Case Law on Who Should Be Sued

{22} The parties cite numerous cases that relate to § 1132(a)(1)(B) actions, none of which, however, address the issue of whether Plaintiff can sue the Plan with Guardian having been dismissed as it was. The cases are, therefore, of limited value. We tend to agree with Employer's comment regarding the district court having found ERISA confusing and difficult to understand: "A reading of the cases presented by the parties in their briefs, below and in this Court, should explain [the court's] befuddlement. If this Court reads the quotes given out of context, it can come up with myriad methods to resolve this case. If this Court reads the opinions in full, it will determine that some of the courts [which] have made blanket statements have cited cases that do not stand for the proposition given." No case of which we are aware can be followed for the result Guardian posits and the district court reached. None of the cases discussed by Guardian persuasively conclude that an insurer, such as Guardian, who has discretionary authority to administer and interpret the plan *is* the plan, and is therefore inseparable from the plan so that a benefits claimant is precluded from pursuing a judgment against the plan as an entity when the insurer was earlier dismissed under circumstances such as those in this case. Those circumstances are a dismissal of the insurer with prejudice based first on preemption and then, as a result of the preemption dismissal, on res judicata and collateral estoppel grounds, where the question of the insurer's liability for benefits has not actually been litigated.

{23} One or more cases state that the proper party defendant in a § 1132(a)(1)(B) benefits claim is the party that controls the administration of the plan. *See, e.g., Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *see also Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 907–08 (11th Cir.1997) (holding a § 1132(a)(1)(B) claim to enforce payment of benefits was a claim solely for equitable relief and thus not assertable against the plan itself as a separate entity). Other cases state that ERISA permits benefits claims only against the plan as an entity or that, at the very least, the plan is a necessary party. *See Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985) (emphasizing that ERISA permits benefits claims only against the plan as an entity, which was the self-funded employer welfare benefit plan); *Roeder v. ChemRex Inc.*, 863 F.Supp. 817, 828 (E.D.Wis.1994) ("An ERISA plan is the only proper defendant when a claim is made for benefits or for a clarification of benefits under the ERISA civil enforcement statute, 29 U.S.C. § 1132(a)(1)(B)."); *Colley v. Sandia Corp.*, No. CIV. 99–994 JP/LFG, at 4–6 (D.N.M. May 2, 2000) (mem. and order) ("The proper conclusion is simply that when a plaintiff seeks against a plan a money judgment, which is enforceable only against the plan, that plan must be before the court and is a necessary party. This position does not create disharmony within the statute"; and also stating that, although "numerous decisions ... have proceeded without the plan as a defendant," usually on the ground that suing an entity with administrative control is sufficient, no court that has done so has "reconciled its position with [§ 1132(d) ] and explained why an entity other than the plan should be responsible for a judgment."); *see also Hemphill v. Unisys Corp.*, 855 F.Supp. 1225, 1234 (D.Utah 1994) (determining that the plaintiff should amend his complaint to add the plan to assure he has stated an ERISA claim against a proper party). The lines of cases and apparent divergence of authority are discussed in *Everhart v. Allmerica Financial Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir.2001); *see also Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir.1998) ("[T]here is a split in authority concerning whether a party other than the ERISA plan itself is the only proper party defendant on a claim pursuant to ERISA [§ 1132](a)(1)(B)."); *Blum v. Spectrum Rest. Group, Inc.*, 261 F.Supp.2d 697, 707–08 (E.D.Tex.2003) (same).

{24} At least one case indicates an identity between the plan and its administrator having discretionary authority. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1485, 1490 (7th Cir.1996) (stating that "[t]he appropriate defendant for a denial of benefits claim would be the Plan, which in this case is "PruCare," where PruCare was the administrator of the plan and also vicariously liable for its agent's determination that benefits were not necessary, causing the plaintiff to be discharged from a hospital without rehabilitation); *see also Cook v. Liberty Life Assurance Co.*, No. CIV. 00–408–B, 2002 WL 482572, at *2 n. 3 (D.N.H.2002) (mem. and order) (stating the court would be strongly inclined toward the position that an insurer with authority to determine and pay long-term disability benefits is a proper party defendant because there existed no "practical distinction between a judgment against the Plan and a judgment against [the insurer] as Plan administrator"). Another court has indicated that a joint and several liability judgment can be rendered against both the assets of the plan and the assets of the insurer. *See Pecor v. Northwestern Nat'l Ins. Co.*, 869 F.Supp. 651, 653 (E.D.Wis.1994) (decision and order) (stating also that "[a] suit for benefits is a suit against the plan, and in this case, a suit against the insurance company with whom the plan contracted to provide the [life insurance] benefits at issue").

**2. Analysis of Whether Plaintiff Can Sue the Plan**

■ {25} A participant or beneficiary unquestionably is given a right under § 1132(a)(1)(B) to sue a plan as an entity. Although authority exists to the contrary, *see Hunt*, 119 F.3d at 908 n. 54 (stating that § 1132(d)(2) "contemplates legal relief and

does not apply to an action to recover benefits under [§ ] [1132](a)(1)(B)"), we read subsections 1132(a)(1)(B) and (d) to permit an action against a plan for past due and future benefits wrongfully denied, and to require a judgment for those benefits to be enforced against the plan. *See Roeder*, 863 F.Supp. at 822, 828 (stating a § 1132(a)(1)(B) claim is "equitable in nature," allowing "an award of equitable relief—a clarification of [a claimant's] right to past or future benefits," yet determining that a declaratory judgment clarifying a right to benefits would be, in effect, a money judgment payable from the plan). Although, as indicated, *Hunt* holds that a § 1132(a)(1)(B) claim for benefits can seek only equitable relief against entities other than the plan and not a money judgment enforceable against a plan, *Hunt*, 119 F.3d at 907–09, we find no analysis in *Hunt* or other cases, *see, e.g., Hall*, 140 F.3d at 1196, persuading us that a judgment for past and future benefits under § 1132(a)(1)(B) should not be considered a money judgment under § 1132(d)(2). One wonders whether the Eleventh Circuit's equitable action theory may have arisen primarily in order to deny a benefits claimant a jury trial. *See Hunt*, 119 F.3d at 907 (indicating the court's decisions were consistent with an earlier one holding § 1132(a)(1)(B) claimants were not entitled to a jury trial); *see also Steeples v. Time Ins. Co.*, 139 F.R.D. 688, 691 (N.D.Okla.1991) (stating the reasoning of the Eleventh Circuit was not compelling, since "almost any breach of contract case could be turned into an equitable matter," and that "[e]ven if … expenses were ongoing, a damage award based on the present value of expected future expenses was certainly possible").

{26} Further, notwithstanding the fact that financial benefits owed and payable by the Plan would be benefits paid by Guardian under the disability policy, we do not view the Plan and Guardian as identical entities with respect to benefits claims. Nothing in subsections 1132(a)(1)(B) or 1132(d) says or even reasonably suggests that a plan referred to in those subsections cannot be liable for benefits as an entity separate from an insurer that issues a disability policy purchased by an employer. *See* 29 U.S.C. § 1002(21)(A) (defining a fiduciary, stating that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such *plan* or exercises any authority or control respecting management or disposition of *its* [the plan's] assets" (emphasis added)). The same can be said of the policy and the Plan: Nothing in the policy or the Plan says or reasonably suggests that the Plan cannot be liable for benefits as an entity separate from Guardian.

{27} We are not persuaded by Guardian's position that, due to Guardian's dismissals, a judgment in this case against the Plan would necessarily be unenforceable in any action or proceeding. At least one case indicates the contrary. In *Colley*, the federal district court sitting in New Mexico determined that a plan was the proper and necessary party defendant and dismissed the plan administrator who denied long-term disability benefits. *Colley*, CIV. 99–994 JP/LFG at 5–7. The court saw little concern about this status of the parties, because it would be the administrator's "decision that will ultimately be reviewed and [the administrator] will still be subject to this court[']s jurisdiction and judgments with respect to its denial of Plaintiff[']s long term disability benefits." *Id.* at 6. The court in *Colley* further stated "[w]hen [a party] acts in its capacity as plan administrator, it steps into the shoes of the [p]lan." *Id.; see also Pecor*, 869 F.Supp. at 653 (permitting a joint and several liability judgment against both the assets of a plan and the assets of the life insurance company with whom the plan contracted for life insurance benefits). Thus, Plaintiff's benefits claim was appropriately pursued against the Plan.

{28} That Guardian was dismissed as a party defendant on the preemption and then res judicata/collateral estoppel grounds relied on by the district court does not, in our opinion, preclude Plaintiff from pursuing a judgment against the Plan. Guardian's res judicata and collateral estoppel defenses were not appropriately applied to preclude Plaintiff's action against the Plan. The res judicata/collateral estoppel dismissals stemmed solely from the preemption order of dismissal. Although none of the dismissals can be reopened, they can be inspected.

None originated from an adjudication of the merits of Plaintiff's benefits claim or from a determination of non-liability for benefits under ERISA. Rather, the original dismissal, i.e., the preemption order of dismissal, was of state law claims based solely on ERISA preemption. It is true that Guardian as insurer under the policy would ultimately be responsible to pay benefits to which a plan participant or beneficiary would be entitled. However, we do not think it is a logical or even practical necessity that we conclude the Plan, as an entity, cannot be determined to be liable for benefits despite the preemption order of dismissal and subsequent res judicata/collateral estoppel dismissals originating from the preemption order of dismissal.

{29} Furthermore, Guardian appeared in its individual corporate capacity when it sought dismissal of the state law claims in the amended complaint on preemption grounds. Guardian appeared in its fiduciary or representative capacity when it sought dismissal of the ERISA benefits claim in the third amended complaint on res judicata grounds. The Plan, also faced with a benefits claim under § 1132(a)(1)(B), cannot draw on the preemption adjudication saving Guardian in its individual capacity from having to defend the state law claims. The necessary privity for res judicata to apply is lacking when, as here, the merits of the claim were not adjudicated in the first action, and Guardian acted individually, in its corporate capacity, in the first action, and acted in a fiduciary or representative capacity in the second. *See Hurt v. Pullman Inc.*, 764 F.2d 1443, 1448–50 (11th Cir.1985) (requiring the party asserting res judicata to appear in the same capacity in both actions, and holding that the employer who appeared in a workers' compensation action in its individual corporate capacity could not successfully assert res judicata in a second action under ERISA where it was defending in its trustee and fiduciary capacities); *Spagnolia v. Dakota Neurosurgical Assocs.*, No. A1–03–87, 2003 WL 23101775, *6–8 (D.N.D.2003) (holding res judicata inapplicable where a pension plan, sued in an ERISA action, was not named as a party in the first state court action, and holding collateral estoppel was inapplicable where the first action involved state law issues that were not identical to the ERISA issues in the second); *Restatement (Second) of Judgments* § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.").

{30} Moreover, collateral estoppel is inapplicable because the issue to be litigated based on the ERISA benefits claim was not actually litigated in a prior adjudication. *See Shovelin v. Cent. N.M. Elec. Coop.*, 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993) (stating one of the four elements of collateral estoppel must be that the issue was actually litigated in the prior adjudication); *Silva v. State*, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987) (holding "that the doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit"). In addition, it is clear from the court's preemption order of dismissal of the amended complaint that Plaintiff did not have a full and fair opportunity to litigate any right to benefits. *See Shovelin*, 115 N.M. at 297, 850 P.2d at 1000 (stating that "[i]f the movant introduces sufficient evidence to meet all elements of this [collateral estoppel] test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation").

{31} Guardian cites several cases to support its res judicata position. *See Slaughter v. AT & T Info. Sys., Inc.*, 905 F.2d 92 (5th Cir.1990); *Bordonaro v. Union Carbide Corp.*, No. CIV.A.01–1177, 2002 WL 32824 (E.D.La.2002) (order and reasons); *Guiles v. Metropolitan Life Ins. Co.*, No. CIV.A.00–5029, 2001 WL 1454041 (E.D.Pa.2001) (mem. and order); *Duran v. Resdoor Co.*, 977 S.W.2d 690 (Tex.Ct.App.1998). Each of these cases involved an action by the plaintiff asserting state law claims, followed by an ERISA-based action. We discuss each of these cases.

{32}   In *Slaughter*, the plaintiff's first action was for breach of contract against her employer. *Slaughter*, 905 F.2d at 93. That action was dismissed, "barred on grounds that limitations had run." *Id.* Her second action was for denial of benefits under ERISA, involving what the court described as an action against "an unfunded benefit plan, self-administered by [the plaintiff's employer]," which, as such, was an action against the employer, since "the entity from which [the plaintiff sought] recovery is really [the employer]." *Id.* at 94.

{33}   In *Guiles*, the plaintiff's first action was an Americans With Disabilities Act claim against her employer; the second was an ERISA claim for denial of disability benefits. *Guiles*, 2001 WL 1454041, at *1. The first action was dismissed with prejudice based on a settlement. *Id.* Relying on *Slaughter*, the court invoked res judicata to preclude the second action against the plaintiff's employer, the employer's investment committee, and the employer's short-term and long-term disability plans. *Guiles*, 2001 WL 1454041, at *2–3. The court's analysis did not include any detail as to plan administration or plan fiduciaries, although it seems clear that the plans were employer-administered plans. *Id.* Interestingly, in discussing, but not analyzing the validity of the employer's argument, the court in a footnote set out the plaintiff's contentions that because the plans could be sued as separate entities under § 1132(d), they were separate entities for res judicata purposes. *Id.* at *2 n. 3. The court stated:

> If the benefit plan is provided by the employer and is internal to the employer, than [sic] that fact would create the close or particular relationship with the party in the original action that would satisfy the second res judicata element. As the defendants noted during the hearing on their motion for summary judgment, employee benefit plans may not always have the close or particular relationship with the employer that is necessary for res judicata purposes. If the benefit plan is an independent third party plan, then claim preclusion would not necessarily apply.

*Id.*

{34}   In *Bordonaro*, the plaintiff sued first for damages under state law for sexual harassment and intentional infliction of emotional distress, and then under ERISA for denial of long-term disability benefits. *Bordonaro*, 2002 WL 32824, at *1. The first action was dismissed at the parties' request after they reached a settlement agreement. *Id.* The court discussed and followed *Slaughter* and *Guiles*, although the court appears to have relied more on interpretation of release language in the settlement agreement from the first action than on res judicata. *Bordonaro*, 2002 WL 32824, at *1–3.

{35}   In *Duran*, the plaintiff sued his employer for wrongful termination and sought damages for " 'benefits, retirement and medical benefits' " that he would have received had he not been terminated. 977 S.W.2d at 692. He then sued his employer under ERISA as administrator of the employer's benefit plan. *Id.* at 691, 693. The first action ended in a jury verdict awarding the plaintiff damages for wrongful termination, including damages for loss of employment benefits. *Id.* at 692–93. The court precluded the ERISA claim to prevent the plaintiff from relitigating the facts and damages decided in the first action against the employer in a different capacity, holding that the plaintiff had already received an award for loss of the same benefits he was seeking in the ERISA action. *Id.* at 693.

{36}   These cases are distinguishable and do not compel a res judicata result in the present case. These cases do not contain analyses that compel a conclusion that an insurer such as Guardian, which is an independent third party providing an insurance policy, and which is also the plan fiduciary in control of the Plan, should necessarily be treated as the same party as the Plan, or in privity with the Plan, when it is sued in the first action in its individual, corporate capacity for state law violations, and the Plan for which it is the fiduciary and which houses its insurance policy is sued in the second action. Unlike the present case, *Slaughter* and *Guiles* involved employer-controlled plans. Further, and most important, in each of the cases the merits of the plaintiff's damages claims were either tried or settled, and the

plaintiff was essentially seeking a second bite of the same apple.

{37} Guardian also relies on *Hunt* to support the res judicata dismissal, because in *Hunt* the entity bearing the ultimate responsibility for denial of the claim for a lump sum benefit was voluntarily dismissed with prejudice as a party to the action by the plaintiff apparently for strategic reasons. *Hunt*, 119 F.3d at 911. The court in *Hunt* held this dismissal to be "an adjudication on the merits ... on all claims [the plaintiff] had brought against the [entity]," and stated that the adjudication thus included the plaintiff's claim that the entity wrongfully refused to pay the plaintiff the lump sum benefit he sought. *Id.* at 911 n. 63. *Hunt* is distinguishable because the dismissed entity's capacities were never different; additionally, the basis for the dismissal of the entity differed significantly from the basis for Guardian's initial dismissal.

{38} In sum, under the circumstances of the present case, where Guardian controlled administration and interpretation of the plan with discretionary authority over benefits, we do not consider the Plan and Guardian to be identical or inseparable in regard to Plaintiff's benefits claim under § 1132(a)(1)(B). We determine that the Plan may be sued for benefits, as subsections 1132(a)(1)(B), (d)(1), and (d)(2) plainly indicate. We hold that Plaintiff's benefits claim against the Plan is not barred under res judicata or collateral estoppel. We also determine that a judgment against the Plan for past due and future benefits is enforceable only against the Plan as an entity, as § 1132(d)(2) plainly states. We make no determination whether in a § 1132(a)(1)(B) action the Plan must be sued and can only be sued. We render no opinion on whether Plaintiff, were she to obtain a judgment against the Plan, can succeed in some action or proceeding to enforce the judgment. That will need to be determined at the time Plaintiff attempts to enforce any judgment she may obtain. We therefore leave for another day the issue of whether a judgment against the Plan can ultimately be satisfied in this case.

## II. Whether Plaintiff Was Entitled to Default or Summary Judgment Against the Plan

{39} Plaintiff asserts that because neither Employer nor Guardian, nor any other person or entity, defended the Plan as an entity and a party against the third-party complaint, Plaintiff was entitled to a judgment by default against the Plan. Plaintiff also asserts that if she was not entitled to a default judgment, she was nevertheless entitled to summary judgment because no response to her motion for summary judgment raised a genuine issue of material fact and she was entitled to judgment as a matter of law.

{40} Plaintiff's motion seeking these judgments set forth the following material facts, among others: To obtain service on the Plan, Plaintiff served summons on Employer and Guardian as administrators of the Plan, and no answer was filed by any party on behalf of the Plan. Further, Plaintiff stated that the weight of the evidence presented in the administrative proceeding showed she was disabled and entitled to benefits under the Plan, indicating that her treating physician stated she was disabled and that delay in receipt of her benefits was detrimental to her condition. To support this statement Plaintiff attached an exhibit to the motion consisting of an unsigned letter from a physician discussing Plaintiff's medical condition. Plaintiff incorporated by reference the additional specific facts contained in her earlier filed brief in support of her motion to reverse. Most of the facts were taken from documents obtained from Guardian's "claim record" in discovery. Plaintiff requested that "the [P]lan ... be ordered to pay disability benefits to [Plaintiff] retroactively from the date of cessation to the present, and continuing unless and until she is no longer disabled."

{41} Guardian responded to Plaintiff's motion for default or summary judgment. Based on Guardian's view that it and the Plan were indistinguishable, Guardian disputed that no answer was filed by any party and stated that Guardian had filed a motion to dismiss the third-party complaint as against Guardian, which was granted.

Guardian disputed that Plaintiff was entitled to benefits, incorporating by reference the contents of other documents it filed in the case. Furthermore, Guardian responded that were the merits at issue, the issue would not be whether Plaintiff was disabled, but whether Guardian abused its discretion in denying benefits. Guardian further responded with the assertion the issue was moot due to the res judicata dismissal of Guardian.

{42} Although the basis for the district court's denial of Plaintiff's default or summary judgment motion against the Plan was the res judicata/collateral estoppel dismissal of Guardian, we hold that the denial of the motion on this erroneous basis does not turn the motion into one we must grant on appeal. That we determine Plaintiff should not be precluded due to Guardian's res judicata/collateral estoppel dismissal from seeking a judgment against the Plan as a separate entity does not mean the Plan lay naked and unprotected before the court. Both Employer and Guardian were very much involved in the case. Guardian persuaded the district court that Guardian and the Plan were inseparable and, therefore, Plaintiff could state no claim against the Plan if Guardian were not a party based on its res judicata/collateral estoppel dismissal. Employer persuaded the court that it was not a proper party. Virtually the entire history of the case involved a battle fought in the procedural arena and on the issue of the actionable status of parties, and not in the merits arena of whether Plaintiff was entitled to benefits. By our reversal on the issue of whether Plaintiff can proceed against the Plan, the battlefield has moved to the merits of the denial of benefits. We conclude that the Plan did not default. Further, while no default was entered by the clerk, *see* Rule 1–055(A) NMRA 2004, even were the Plan technically in default, we think that due to the peculiar procedural history of this action and the issues presented, adequate bases exist to reach the merits of Plaintiff's benefits claim against the Plan. *See Springer Corp. v. Herrera*, 85 N.M. 201, 202–03, 510 P.2d 1072, 1073–74 (1973) (indicating it is the policy of the law to look with disfavor on default judgments and that cases be decided on their merits, and stating further that a motion to set aside a default judgment

is addressed to the sound discretion of the court), *overruled on other grounds by Sunwest Bank v. Roderiguez*, 108 N.M. 211, 770 P.2d 533 (1989). We further conclude that the summary judgment proceeding based on Plaintiff's motion lacked both a meaningful procedural basis as well as sufficient evidentiary basis for a judgment on the merits.

### III. The Dismissal of Employer was Appropriate

{43} Although Plaintiff cites cases stating that a plan administrator can be liable, Plaintiff affirmatively states that she is not seeking relief against Employer in its individual capacity. Yet, because Employer was determined by the court to be the Plan administrator, Plaintiff seeks to keep Employer in the lawsuit because it is the Plan sponsor and administrator. At oral argument, Plaintiff sought to impose on Employer the capacity of a co-fiduciary under 29 U.S.C. § 1105(a)(3), arguing that under §§ 1104 (fiduciary duties) and 1105(a)(3) (liability for breach of co-fiduciary), Employer should remain a defendant because, as a "co-fiduciary," Employer at the very least had a duty to prevent Guardian from breaching Guardian's obligations under the Plan, and that Employer should remain a party so it can act on behalf of the Plan and effectuate the judgment Plaintiff seeks against the Plan.

{44} Although the sponsor and administrator of the Plan, Employer's duties and functions under the Plan were ministerial and minimal. Employer had no duties or obligations or discretionary authority in regard to making a determination whether beneficiaries or participants were entitled to benefits. Nothing in the Plan indicates in any way that, were there to be a judgment against the Plan on Plaintiff's benefits claim, Employer would be required to act or would have authority or power to act in any manner as administrator or as a fiduciary to carry out the judgment or to see that the judgment was satisfied.

{45} We do not find under the ERISA definition of fiduciary, *see* § 1002(21)(A), or under the language of the Plan, anything that would bring Employer within the con-

cept of fiduciary or co-fiduciary. Since Plaintiff is not seeking a determination of Employer's liability in its individual capacity, and since Employer as administrator had no authority or discretion in regard to acting on Plaintiff's benefits claim and had merely ministerial duties in regard to claim forms, we fail to see how Employer could be a proper party. Employer's mere existence as sponsor and plan administrator with no control over the administration of the Plan and no authority or discretion in regard to acting on a benefits claim does not assist Plaintiff in advancing toward a judgment for benefits under the Plan.

{46} We hold that Employer is not a proper party in the circumstances of this case. *See Terry v. Bayer Corp.,* 145 F.3d 28, 35–36 (1st Cir.1998); *Layes,* 132 F.3d at 1249–50; *Bordonaro,* 2002 WL 32824, at *3; *Henderson v. Transamerica Occidental Life Ins. Co.,* 120 F.Supp.2d 1278, 1282 (M.D.Ala. 2000); *Wojciechowski,* 75 F.Supp.2d at 261; *see also* 29 C.F.R. § 2509.75–8, D–2 (1976) (stating that an entity which merely processes claims "is not a fiduciary because such

person does not have discretionary authority or discretionary control respecting management of the plan").

## CONCLUSION

{47} We affirm the district court's dismissal in favor of Employer of the third amended complaint. We reverse the district court's dismissal in favor of the Plan of the third amended complaint. Plaintiff is entitled to proceed against the Plan on the merits of her benefits claim. We affirm the district court's denial of Plaintiff's motion for default judgment or, alternatively, for summary judgment. We remand for further proceedings consistent with this opinion.

{48} IT IS SO ORDERED.

ROBINSON and VIGIL, JJ., concur.