IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-014

Filing Date: March 4, 2010

Docket No. 31,329

STELLA R. KIRBY,

      Plaintiff-Petitioner,

v.

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Ralph D. Shamas, District Judge

Mettler & Lecuyer, P.C.
Earl R. Mettler
Shiprock, NM

for Petitioner

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Donald A. Decandia
Albuquerque, NM

for Respondent

OPINION

BOSSON, Justice.

{1}    Wrongfully denied her disability benefits, a former employee obtained a judgment against her employer's long-term disability plan based on rights accorded under the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461 (2000). The employee seeks to enforce that judgment by way of a writ of garnishment against the insurer whose insurance policy funded the employer's disability plan. The district court granted the writ of garnishment against the insurance company, but the Court

1

of Appeals reversed, concluding that the employee's case did not fit its understanding of the proper scope of garnishment under state law. We reverse the Court of Appeals, uphold the writ of garnishment against the insurer, and remand to the Court of Appeals for further proceedings.

**ERISA AND THE PARTIES**

{2}    This case involves four parties: the plaintiff and former employee Stella Kirby (Kirby); the former employer Adecco (Adecco); the long-term disability plan established by Adecco to provide benefits to eligible employees (the Plan); and the defendant in this appeal (Guardian), who is the insurer and claims fiduciary of the Plan. The present action is one for enforcement of a writ of garnishment, but it follows a lengthy and complex procedural history that originated almost eleven years ago with Kirby's claim for wrongful denial of disability benefits under ERISA. We summarize the procedural history below, but first examine the relationship of the parties under ERISA.

{3}    Congress enacted ERISA

> to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

Section 1001(b); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (citing § 1001(b)). The statute was Congress's response to the growing problem of employer-funded pension plans failing to provide promised benefits to employees, most notably in the case of the Studebaker bankruptcy, which left thousands of current and former employees without pension benefits after years of service. Colleen E. Medill, *Introduction to Employee Benefits Law: Policy and Practice* 15 n.2 (2d ed. 2007).

{4}    The statute establishes a legal entity called the "employee benefit plan," which is designed to be independent of the employer, and is charged with managing plan funds in the sole interest of plan participants and beneficiaries. *See Boggs v. Boggs*, 520 U.S. 833, 845-46 (1997); *see also* § 1001(b) (stating purpose of ERISA). Employee benefit plans are of two types: welfare benefit plans that provide for health, vacation or training, and pension benefit plans that provide retirement income. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 827 n.1 (1988); § 1002(1)-(3). The Plan in this case is a "welfare benefit plan," which is defined under ERISA as a plan "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment." Section 1002(1).

2

**{5}** ERISA allows flexibility in the exact arrangement of welfare benefit plans. For example, under ERISA, a plan may be self-funded or funded by an insurance policy, or by some combination thereof. *Id.; see also FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (providing self-funded benefits to employees and their dependants). A self-funded plan collects premiums and maintains those funds in a trust account, paying benefits from this account to eligible plan beneficiaries. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 580-82 (1985). Under an insured plan arrangement, the insurance company collects premiums and pays benefits directly to eligible employees.

**{6}** In the present case, the Plan is funded by an insurance policy (hereinafter, the "Policy") issued by the Plan's insurer, Guardian. Under the Policy, Guardian is responsible for paying benefits directly to eligible beneficiaries. Under the present plan arrangement, Guardian also serves as the claims fiduciary of the Plan with sole discretion to determine eligibility for disability benefits. ERISA outlines the role of a fiduciary as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity . . . would use.

Section 1104(a)(1)(A)-(B). As fiduciary, Guardian is also responsible for complying with ERISA's fiduciary requirements provisions. *See* §§ 1002(21)(A), 1144.

**{7}** The employer, now Adecco,[1] purchased the Policy from Guardian, which served to establish the Plan. *See Kirby v. TAD Res. Int'l, Inc.*, 2004-NMCA-095, ¶ 17, 136 N.M. 148, 95 P.3d 1063 (*Kirby I*) (stating that purchase of long-term disability insurance establishes an ERISA plan, and citing § 1002(1)). Adecco is the plan sponsor and administrator with the responsibility to perform various administrative functions on behalf of the Plan, but it does not retain any discretion to make determinations on claims for benefits. *Kirby I*, 2004-NMCA-095, ¶ 44. Due to its limited role in the ERISA plan arrangment, Adecco has been properly dismissed from this case. At this stage, only Kirby, Guardian and the Plan remain parties to the dispute.

**THE PROCEDURAL HISTORY**

**{8}** This case comes to us after more than a decade of litigation in state and federal courts, originating with Guardian's decision to deny Kirby's disability benefits in 1997. In all these years, the issue of Kirby's eligibility for benefits under the Plan has been

---

[1]Kirby's employer was initially TAD Technical Services Corporation, Inc. Its name was changed to TAD Resources International, Inc. in 1994, and that company was acquired by Adecco in 1997.

overshadowed by procedural issues regarding the nature of the litigation itself. A detailed account of the early procedural history of this case can be found in the first Court of Appeals opinion it generated, *Kirby I*, 2004-NMCA-095. We highlight here only the most critical early developments, and the progression of the case following remand by the *Kirby I* court.

**{9}** After 16 years of service to Adecco, Stella Kirby was first approved for long-term disability benefits in 1996. In May 1997, Guardian informed Kirby that she would no longer receive benefits, and promptly ceased making disability payments. Kirby filed her first complaint in April 1999, in the Fifth Judicial District Court of New Mexico, naming Guardian and Adecco as defendants, and alleging seven state-law causes of action. In December 1999, the district court dismissed the complaint with leave to amend, on the ground that it was preempted by ERISA, §§ 1001 to 1461. No appeal was taken from that dismissal.

**{10}** Kirby timely filed a second amended complaint in December 1999, now properly alleging a cause of action under ERISA. Critical to subsequent developments, however, Kirby failed to name Guardian as a defendant in the second amended complaint. In November 2000, while the second amended complaint was pending, Kirby's first counsel withdrew from representation on the basis of irreconcilable differences. Kirby retained new counsel and, in February 2001, entered into a stipulation with Adecco, whereby the parties agreed that Kirby would file a third amended complaint based on ERISA.

**{11}** In March 2001, Kirby filed a third amended complaint alleging a proper cause of action under ERISA, § 1132(a)(1)(B), once again including Guardian along with Adecco, and for the first time, the Plan, as the named defendants. Guardian moved to dismiss the third amended complaint, arguing that Kirby had failed to name Guardian within 15 days of the district court's December 1999 dismissal of the first-amended complaint, as directed in that order of dismissal. The district court granted the motion, and, in September 2001, the third amended complaint against Guardian was dismissed with prejudice on *res judicata* grounds.

**{12}** In February 2002, Kirby served Guardian for the first time in its capacity as administrator of the Plan, by way of an alias summons on the third amended complaint. Kirby also served the Plan itself by alias summons, through service upon the Secretary of Labor. The court granted Adecco leave to amend its answer to include a third-party complaint against Guardian, which sought indemnification from Guardian in the event Adecco should suffer an adverse judgment.

**{13}** Kirby argued that re-service on Guardian as plan administrator was made only to perfect service on the Plan. Kirby stated in the same pleading, as well as in a letter to Guardian's counsel, that Kirby understood and accepted the fact that Guardian was not directly liable and that Guardian had been properly dismissed. However, this position changed once again in November 2002, when Kirby asserted that Guardian, as insurer of the Plan, should in fact be responsible for any judgment against the Plan.

4

**{14}** In July 2002, the district court granted Guardian's motion to dismiss the third-amended complaint against it, on grounds that the complaint was barred by *res judicata* and collateral estoppel. The complaint against Guardian was dismissed with prejudice. Notwithstanding, Guardian remained a part of the litigation as a third-party defendant to the claim against Adecco.

**{15}** Kirby filed a motion for default judgment against the Plan in December 2002. Guardian defended the Plan entirely on *res judicata* grounds, not in defense of the Plan on the merits. In February 2003, the district court ruled on the various motions submitted by the parties, granting Adecco's motion for summary judgment against Kirby, and denying Kirby's motion for default judgment against the Plan.

**{16}** In dismissing the claim against the Plan with prejudice, the court found that

> [i]n reality, there is no such entity [as the Plan]. Guardian had full discretionary authority over benefit claims, and by virtue of failing to assert any claims against Guardian in her Second Amended Complaint, Kirby is unable to obtain benefits from Guardian. I decline to enter a judgment against the Plan when Kirby is precluded from recovering against the party that funds the Plan.

Kirby appealed, resulting in the Court of Appeals *Kirby I* opinion.

**{17}** With regard to the Plan, the appellate court reversed the district court, holding that under ERISA, Guardian and the Plan are distinct entities, such that suit could proceed against the Plan despite Guardian's *res judicata* dismissal from the case. *Kirby I*, 2004-NMCA-095, ¶¶ 26-28. The court declined to decide, however, how any judgment against the Plan would be enforced if Kirby should prevail on remand. *Id.* ¶ 38. As to Adecco, the Court of Appeals affirmed its dismissal from the case, holding that since it lacked discretionary authority to approve or deny benefits payments, it was not a proper defendant. *Id.* ¶¶ 45-46. Adecco is no longer a party to this lawsuit.

**{18}** Kirby proceeded against the Plan, now as the sole named defendant, by way of a September 2004 Renewed Motion to Reverse ERISA Plan Benefits Denial. Guardian was served with a copy of this pleading, but elected not to appear at the hearing on the Motion. The district court entered a default judgment in Kirby's favor and against the Plan, ordering the Plan to reinstate and pay benefits, retroactive from 1997 to the date of the order. The judgment and order contained several findings, including that Kirby was totally disabled, that she was entitled to benefits, and that Guardian's denial of benefits was arbitrary and capricious. The court also awarded attorney fees and costs against the Plan. The Plan administrator submitted this judgment to Guardian for payment, which Guardian refused to honor.

**{19}** Kirby proceeded to file suit in federal district court under ERISA, § 1132(a)(1)(B)

5

(wrongful denial of benefits) and § 1132(a)(3) (breach of fiduciary obligations), naming the Plan, Adecco, and Guardian as defendants. *See Kirby v. Long-Term Disability Plan of TAD Res. Int'l, Inc.*, No. Civ. 05-402, slip op. (D.N.M., filed May 1, 2006) ("*Kirby-Federal*"). The basis for all counts against Guardian was its refusal to pay Kirby in accordance with the state default judgment. *Kirby-Federal*, slip op. at 7-8. The federal district court dismissed all counts against Guardian, reasoning that in reality Kirby's claims were not claims against Guardian under ERISA, but rather, they were claims against Guardian to enforce the default judgment against the Plan—a purely state law issue not implicating ERISA. *See Kirby v. Long-Term Disability Plan of TAD Res. Int'l*, 2008-NMCA-154, ¶ 6, 145 N.M. 264, 196 P.3d 965 (*Kirby II*). Kirby appealed this decision to the U.S. Court of Appeals for the Tenth Circuit, and that appeal was stayed, pending resolution of the present state court proceedings.

**{20}** In July 2006, Kirby returned once again to state court, filing an application for a writ of garnishment against Guardian, describing the subject of garnishment as the Policy. The district court issued the writ on August 3, 2006. Guardian submitted a form answer to the writ, and contested Kirby's motion for summary judgment on the garnishment claim, arguing, *inter alia*, that Guardian held no property of, and owed no money to, the judgment debtor, the Plan.

**{21}** In March 2007, the district court entered judgment in Kirby's favor, granting her motion for summary judgment on the garnishment claim, and ordering Guardian to pay all sums awarded in the November 2004 and December 2004 awards. The court concluded that prior orders concerning Guardian as the individual party defendant did not have preclusive effect on the claim against Guardian as garnishee, and that the "[p]olicy imposes an obligation on Guardian Life to pay the benefits awarded to Plaintiff." The court found that Kirby was entitled to "garnishment of the . . . [p]olicy."

**{22}** Guardian filed a notice of appeal in March 2007, and that appeal resulted in the Court of Appeals' second opinion (herein referred to as "*Kirby II*"). The *Kirby II* court reversed the district court, holding that the Guardian insurance Policy is neither an asset of, nor a debt owing to the Plan, and thus the garnishment order did not comport with the New Mexico garnishment statute. *Kirby II*, 2008-NMCA-154, ¶ 2. Kirby petitioned this Court for certiorari, which we granted to resolve a novel question of garnishment under our state law.

**DISCUSSION**

**{23}** We granted certiorari to determine whether garnishment is an appropriate mechanism to enforce a money judgment issued against an ERISA plan, where the subject of garnishment is an insurance policy obligating the insurer to pay disability benefits directly to eligible plan beneficiaries. The present dispute between Kirby and Guardian involves the district court's ruling granting Kirby's motion for summary judgment on her garnishment claim; it is *not* an appeal of the default judgment on the merits of her claim for wrongful denial of benefits, which Kirby secured against the Plan under ERISA. ERISA law remains relevant to certain portions of our analysis, but any dispute over Kirby's eligibility for

6

disability benefits as determined in the default judgment will not be revisited here.

**{24}** When our Court of Appeals first heard this case, it held that the Plan was a proper defendant to Kirby's claim for wrongful denial of benefits. The court was not tasked with deciding if, or how, Kirby might enforce a judgment secured against the Plan, and it rightly avoided the question, stating,

> We render no opinion on whether [Kirby], were she to obtain a judgment
> against the Plan, can succeed in some action or proceeding to enforce the
> judgment. That will need to be determined at the time [Kirby] attempts to
> enforce any judgment she may obtain. We therefore leave for another day the
> issue of whether a judgment against the Plan can ultimately be satisfied in
> this case.

*Kirby I*, 2004-NMCA-095, ¶ 38. Nearly five years later, that "day" has finally arrived, and in this Opinion we answer the question left open by the Court of Appeals as to "whether a judgment against the Plan can ultimately be satisfied in this case." *Id.*

**{25}** The federal district court in *Kirby-Federal* also had good reasons to avoid the ultimate question of Guardian's obligations to satisfy the Plan's adverse judgment. Concluding that ERISA made no provision for enforcement of judgments secured under § 1132, the *Kirby-Federal* court deferred to our state courts to determine, in accordance with state judgment enforcement law, who has the responsibility to pay the judgment against the Plan. *Kirby-Federal*, slip op. at 16-17.

**{26}** Now that the question is properly before our state courts, we hold that the provisions of the Policy require Guardian to pay benefits when there is a judicial determination that a participant/beneficiary is eligible. The Court of Appeals below held that the Policy is not a garnishable asset of the Plan. We hold that while the Policy itself is not a garnishable asset, the Policy imposes a legally binding obligation on Guardian, the violation of which gives the Plan a valid right of action against Guardian. Because that right of action is not subject to any contingency nor defeated by any defense, it may properly be garnished by Kirby, standing in the shoes of the Plan against Guardian, to satisfy the Plan's liability to Kirby.

**I.      Under the law of garnishment the garnishor/judgment creditor acquires the judgment debtor's right of action against the garnishee.**

**{27}** The district court concluded that garnishment was appropriate in this case because the Policy is an asset of the Plan, imposing an obligation on Guardian to pay benefits awarded to Kirby in the default judgment. Guardian contends that the garnishment statute does not allow the Policy to be garnished in this manner, because it is neither a debt owed to the Plan nor personal property of the Plan held by Guardian. The Court of Appeals agreed with Guardian's interpretation of the garnishment statute, limiting its analysis to whether the

7

Policy was a debt or personal property. *Kirby II*, 2008-NMCA-154, ¶ 9. In our view, this interpretation of our state garnishment statute was unnecessarily restrictive.

**{28}** We turn to New Mexico garnishment law. Under NMSA 1978, Section 35-12-3 (1969), "service of a garnishment on the garnishee has the effect of attaching all personal property, money, wages . . . rights, credits . . . and other choses in action of the defendant in the garnishee's possession or under his control at the time of service." The garnishee may contest the subject of garnishment in his answer, and if the plaintiff/garnishor fails to controvert the answer, the garnishee will prevail by default judgment. NMSA 1978, §§ 35-12-4, -5 (1968, as amended through 1969). If the garnishee does not dispute the garnishment, default judgment is entered in favor of the garnishor. Section 35-12-4. The court issuing the writ of garnishment will decide any remaining dispute between the parties in a garnishment proceeding. *Jemko, Inc. v. Liaghat*, 106 N.M. 50, 53, 738 P.2d 922, 926 (Ct. App. 1987).

**{29}** The effect of garnishment is that the garnishor (here Kirby) is subrogated to the rights of the judgment debtor (the Plan) as against the garnishee (Guardian), and the garnishor cannot prevail against the garnishee unless the judgment debtor could do so. *See id.* at 53-54, 738 P.2d at 926-27; *Gallegos v. Espinoza* , 2002-NMCA-011, ¶ 8, 131 N.M. 487, 39 P.3d 704 (citing *Carpenters S. Cal. Admin. Corp. v. Mfrs. Nat'l Bank of Detroit*, 910 F.2d 1339, 1341 (6th Cir. 1990)). In order to be garnishable, the subject of garnishment must be mature, not subject to any contingency. *See Gallegos*, 2002-NMCA-011, ¶ 9 (citing *Garland v. Sperling*, 6 N.M. 623, 632, 30 P. 925, 927 (1892), *aff'd*, 7 N.M. 121, 32 P. 499 (1893)); *see also Beaufort Transfer Co. v. Fischer Trucking Co.*, 357 F. Supp. 662, 667 (D. Mo. 1973) (holding that "a debt which is conditional or dependent for its existence upon some contingency is not a subject of garnishment"). Finally, the garnishee may assert any defenses against the garnishor that he could have asserted in a direct action against the judgment debtor. *Gallegos*, 2002-NMCA-011, ¶ 9.

**{30}** In support of its narrow interpretation of the statute, Guardian relies on references in the garnishment statute, and relevant judicial rules and forms of this Court, to "indebtedness" or "personal property," in the hands of the garnishee. *See* NMSA 1978, § 35-12-1(D) (1969) (plaintiff's affidavit must state that garnishee "is indebted to defendant . . . or holds personal property belonging to the defendant"); Rule 4-805 NMRA (application for writ of garnishment must state that garnishee "holds or controls money or personal property which belongs to the judgment debtor").

**{31}** While Guardian is correct to state that debts owed to, and personal property of, the judgment debtor are proper subjects of garnishment, they are not exclusive. If we were to limit garnishment to these two subjects, we would miss a critical analytical step: a debt or personal property is garnishable *only if* the judgment debtor has a mature right of action against the garnishee for the same. *See Jemko*, 106 N.M. at 55, 738 P.2d at 925 ("The test as to whether funds in the hands of another are subject to garnishment is whether the defendant in the original action could recover such funds directly against the garnishee.").

8

Indeed, a "debt owed" or "personal property" could never *automatically* be deemed a proper subject of garnishment, because the garnishee is free to contest the assertion that such debt exists or is owing, or that such property in fact belongs to the judgment debtor. *See* § 35-12-4.

**{32}** In contrast to Guardian's restrictive reading, the garnishment statute explicitly permits, in addition to debts and personal property, attachment of rights, credits, and other choses in action of the Plan in Guardian's possession. *See* § 35-12-3. "A chose in action is a debt owed to a debtor *or a right of action of a debtor.*" *Cent. Sec. & Alarm Co. v. Mehler*, 1998-NMCA-096, ¶ 19, 125 N.M. 438, 963 P.2d 515 (internal quotation marks omitted) (emphasis added); *see also In re Lucas*, 107 B.R. 332, 337 n.4 (D.N.M. 1989) ("A chose in action is a thing in action, meaning the right of bringing an action or right to recover a debt or money. It is a personal right . . . recoverable by a law suit. Blacks Law Dictionary 219 (5th ed. 1979).").

**{33}** In other words, the object of garnishment is the Plan's right of action against Guardian for performance under the Policy. It is of no consequence that language of "rights" and "choses in action" is not repeated throughout the statute, because once a court determines the merits of the judgment debtor's right of action, it is, like any judgment, transformed into a presently owing debt (or personal property that must be surrendered, depending on the nature of the asserted action). *See Brunskill v. Stutman*, 8 Cal. Rptr. 910, 915-16 (Cal. App. 2d Dist. 1960) (declaring, where liability can be determined as a matter of law, that liability is a "debt" owing to the judgment debtor). Thus, the primary test for whether garnishment is appropriate is whether the judgment debtor, the Plan, has a valid right of action against the garnishee, Guardian, for the subject sought to be garnished.

## II.    Garnishment is limited by the requirement that the judgment debtor's right of action not be subject to any contingency or defense.

**{34}** Garnishment focuses on the right of action between the judgment debtor and the garnishee, and is limited by the rule that a proper subject of garnishment must be presently owing, not subject to any contingency or defense. *Gallegos*, 2002-NMCA-011, ¶ 9; *see also* NMSA 1978, § 35-12-6 (1968) ("Debts not yet due to the defendant may be garnished, but no execution shall be awarded against the garnishee for such debts until they become due."). The garnishment statute contemplates *some* litigation of rights in the garnishment action, as long as those rights are mature at the time of service of garnishment. *See Jemko*, 106 N.M. at 52, 738 P.2d at 924 ("The court issuing the garnishment may determine any controversy between the parties when it can be done without prejudice to the rights of others . . . ."); § 35-12-3 (garnishment attaches all subjects of garnishment in garnishee's possession or control between the time of service and the filing of the answer); *see also Gallegos*, 2002-NMCA-011, ¶ 9 (holding that the debt must be "'absolutely, and unconditionally owing and payable at the present or some future time' when the writ is served" (quoting *Garland*, 6 N.M. at 632, 30 P. at 927)).

**{35}** An obvious example of a right of action subject to a contingency is a claim in tort where damages would depend on litigation of that tort claim before any consideration of garnishment could become ripe. *See Clapper v. Petrucci*, 497 S.W.2d 120, 122 (Tex. Civ. App. 1973). Liability at the time of service is impossible to determine because the facts of the case must be developed by the litigants and decided by a jury. *See McNeilly v. Furman*, 95 A.2d 267, 272 (Del. 1953) (holding that wrongful death claim, unlike a contract claim, is not garnishable because it is not liquidated or capable of liquidation). A claim for breach of contract may also be contingent if the claim for damages depends on a factual determination or if performance is not substantially complete. *See Able Distrib. Co. v. Lampe*, 773 P.2d 504, 510 (Ariz. Ct. App. 1989); *Clapper*, 497 S.W.2d at 122. However, the garnishee's mere denial of the judgment debtor's right of action does not render that right contingent. *See Able Distrib. Co.*, 773 P.2d at 508; 6 Am. Jur. 2d *Attachment & Garnishment* § 508 (2008).

**{36}** Unlike a tort claim, a right of action based on breach of contract is not always contingent, because breach can sometimes be determined as a matter of law. The Arizona opinion in *Lampe* involved the garnishment of a contractual right to payment, where the garnishee asserted that the judgment debtor had not performed, and thus was not entitled to payment. 773 P.2d at 506-07. The court deferred to the ruling of the trial court in the garnishment action, which had concluded that the contract was substantially complete and liability for breach could be determined as a matter of law in the garnishment proceeding. *Id.* at 509. There was no future, uncertain event that would affect liability, so garnishment was appropriate. *Id.*; *see also Attachment & Garnishment* § 98 ("A 'contingent liability,' which is not subject to garnishment, is one that is not certain or absolute, but hinges on some independent event."); *Hometown Bank v. Acuity Ins.*, 748 N.W.2d 203, 206 (Wis. Ct. App. 2008) ("[T]he test is whether [judgment debtor] had at or since service of the writ, or in the future certainly will have, such a cause of action . . . .").

**{37}** A judgment debtor's right of action must also survive any defense that the garnishee might assert. *See Gallegos,* 2002-NMCA-011, ¶ 9. In *Gallegos*, the judgment debtor was a subcontractor, and the judgment creditor sought to garnish the payment due the subcontractor under its contract with the prime contractor. *Id.* ¶ 1. The subcontractor had completed performance, so it had a mature right of action against the prime contractor for payment. Nevertheless, the prime contractor asserted a statutory defense, arguing that garnishment was prohibited by NMSA 1978, Section 13-4-28 (1995, repealed 2001). That statute required subcontractors to pay *their* subcontractors from payment received from the prime. *Gallegos*, 2002-NMCA-011, ¶ 13. The purpose of the statute was to protect all subcontractors along the chain of payment, because attachment of any one subcontractor's right to payment would impact its ability to pay contractors lower on the chain. The Court of Appeals determined that the statutory defense was valid and applicable as a matter of law, thereby defeating the garnishment action. *Id.* ¶ 20.

**{38}** To sum up, under our garnishment statute, the garnishor steps into the shoes of the judgment debtor as against the garnishee. Whatever the subject of garnishment, the primary

focus is on the right of action that the judgment debtor itself could assert against the garnishee, in light of any contingencies or defenses. In the present case, Kirby stands in the shoes of the Plan as against Guardian, seeking to garnish any right of action that the Plan could claim against Guardian under the Policy. Whether garnishment is appropriate in this case turns on the maturity of the Plan's right of action against Guardian, and whether any contingency of defense defeats that right of action. Because the Court of Appeals operated from an overly restrictive premise, we perform our own analysis of how garnishment law applies in this case.

### III. The Plan's right of action against Guardian for breach of the Policy may be garnished.

### A. Because Guardian is in breach of the Policy as a matter of law, the Plan has a valid right of action against Guardian.

**{39}** Kirby seeks to enforce her judgment against the Plan by attaching its only asset: the Policy. *See Midwest Cmty. Health Serv., Inc. v. Am. United Life Ins. Co.*, 255 F.3d 374, 377 (7th Cir. 2001) (stating contract of insurance issued by insurer for benefit of plan is plan asset). The Court of Appeals concluded that the Policy could not be garnished because it is not a debt or personal property of the Plan and, in any event, requires payment of benefits directly to plan beneficiaries, not to the Plan. *Kirby II*, 2008-NMCA-154, ¶¶ 9-11. We disagree with the Court of Appeals on this first point because the analysis is incomplete; it does not address the validity of the Plan's *right of action* against Guardian. The next argument does not persuade us because it focuses on the flow of benefits payments established by the Policy, not on the flow of liability for breach of the Policy.

**{40}** We turn first to an evaluation of the Plan's right of action against Guardian. The Court of Appeals relied entirely on ERISA law in evaluating the Plan's right of action against Guardian, presumably in accordance with ERISA preemption. *See id.* ¶ 11; § 1144(a). The Court reasoned that the Plan does not have standing to sue under § 1132(a)(3), and even if it did, § 1132(a)(3) only allows for equitable relief (not legal relief in the form of damages). *Kirby II*, 2008-NMCA-154, ¶ 11. Thus, the Court failed to decide whether Guardian had breached its obligations under the terms of the Policy. We do so here. In subsection (1), we explain why ERISA does not preempt the application of our garnishment law. In subsection (2), we analyze the present dispute under our garnishment law and explain why Guardian's refusal to pay benefits following the default judgment constituted a breach of the Policy, creating a valid right of action in the Plan subject to Kirby's writ of garnishment.

### 1. An action by our state courts to enforce the default judgment is an action under state law.

**{41}** ERISA is a comprehensive statute, preempting all state laws relating to employee benefits plans. *See* § 1144(a); *see also* § 1144(c)(1) ("The term 'State law' includes all laws,

11

decisions, rules, regulations, or other State action having the effect of law . . . ."). ERISA also retains original jurisdiction almost exclusively in the federal district courts to adjudicate employee benefits disputes; concurrent state court jurisdiction extends only to claims for wrongful denial of benefits under § 1132(a)(1)(B). *See* § 1132(e)(1). Kirby's suit against the Plan was one for wrongful denial of benefits, and so was properly prosecuted in state court, resulting in the default judgment in Kirby's favor. However, given the broad scope of ERISA's preemption provision, we first inquire whether application of our garnishment statute is rendered inappropriate by ERISA.[2] We conclude that ERISA does not preempt Kirby's garnishment action.

**{42}** ERISA preemption analysis must operate from "the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). As the Supreme Court has held on several occasions, "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). In enacting § 1144 of ERISA, Congress intended

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government [and to prevent] the potential for conflict in substantive law . . ., requiring the tailoring of plans and employer conduct to the peculiarities to the law of each jurisdiction.

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990) (citation omitted). The United States Supreme Court has further clarified that a state law is preempted by ERISA when it "[provides] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA," because such a law undermines ERISA's goal of "assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). Thus, ERISA preemption depends on whether a state law creates "a new cause of action," or authorizes a "new form of ultimate relief," in conflict with ERISA's comprehensive enforcement scheme. *Id.*

---

[2]"Under the Supremacy Clause of the United States Constitution, U.S. Constitution article VI, clause 2, federal preemption of state law may be explicitly mandated by Congress, compelled due to an unavoidable conflict between the state law and the federal law, or compelled because the state law is an obstacle to the full accomplishment of congressional objectives." *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2005-NMCA-053, ¶ 31, 137 N.M. 537, 113 P.3d 360 (internal quotation marks and citation omitted).

Application of our garnishment law to enforce Kirby's judgment against the Plan does neither.

**{43}** First, Guardian's liability under the writ of garnishment is no greater than that of the Plan under the default judgment, and the Plan's liability was determined entirely under the law of ERISA. As the Plan's insurer, Guardian is responsible for payment of disability benefits to eligible employees, and the writ of garnishment does nothing to alter the amount a beneficiary may recover or the terms of eligibility provided for in the Policy in accordance with ERISA. By enforcing Guardian's obligations under the terms of the Policy, we impose no more liability upon Guardian than does ERISA itself: "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . in accordance with the documents and instruments governing the plan." Section 1104(a)(1)(D). That Guardian would be liable for paying benefits under the Policy, after a beneficiary prevails on an § 1132(a)(1)(B) action against the plan, is eminently predictable.

**{44}** Second, application of our garnishment law does nothing to alter ERISA's remedial scheme or the "form of ultimate relief" that Kirby can obtain. Section 1132(a)(1)(B) allows for reinstatement of benefits wrongly denied and § 1132(g) allows for recovery of reasonable attorney's fees by the prevailing party. Kirby's ultimate relief—reinstatement of benefits and recovery of attorney's fees—is exactly the form of ultimate relief provided in ERISA. Garnishment is merely a means of enforcing the remedies awarded in a separate judgment. As such, ERISA's remedial scheme remains unaffected by our ruling today.

**{45}** Guardian contends that § 1132(d)(2) expressly prohibits imposing liability on anyone other than the Plan. That provision states: Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter. Section 1132(d)(2). While there is some authority supporting Guardian's interpretation, the federal courts are divided both as to the meaning and the effect of § 1132(d)(2). *Compare Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007) ("[Consistent with § 1132(d)(2)], in a suit for ERISA benefits, the plaintiff is limited to a suit against the Plan." (Internal quotation marks and citation omitted.)), *and Hackner v. Long Term Disability Plan*, 81 Fed. Appx. 589, 593-94 (7th Cir. 2003) (insurer dismissed because, under § 1132(d)(2), plan was the *only* party against whom a money judgment could be enforced), *with Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 908 (11th Cir. 1997) ("[N]othing in ERISA permits the district court to issue an injunctive order solely against the plan. . . . "[A]n order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested." (Citing § 1132(d)(2).)), *and Sparks v. Duckrey Enters., Inc.*, No. 05-2178, 2007 WL 320260, at *6 (E.D. Pa. Jan. 30, 2007) (citing several district courts as holding that "the proper defendants to a claim brought under § 502(a)(1)(B) . . . are the plan itself and its fiduciaries").

**{46}** The one consistent interpretation of § 1132(d)(2) we can discern from the federal

cases is that the statute envisions a money judgment against the Plan as an entity, and not against any individual representatives of the Plan in their individual capacities. *See, e.g.*, *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (barring suit against individual corporate representatives because "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable"); *Davis v. Bante*, No. 07-CV-12270, 2007 WL 2875244, at *5 (E.D. Mich. Sept. 28, 2007) (dismissing plaintiff's suit because named defendant, in individual capacity as "Benefits Advisor," was an improper party under § 1132(d)(2)). This reading of § 1132(d)(2) is also consistent with the immediately preceding provision of § 1132(d)(1), which provides:

> An employee benefit plan may sue or be sued under this subchapter *as an entity*. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan *in his capacity as such* shall constitute service upon the employee benefit plan.

(Emphasis added.) Read together, the provisions of § 1132(d) authorize suit by and against the ERISA plan, while generally protecting individual decision-makers from liability. Critically, however, we do not read § 1132(d) as precluding a suit against another entity, such as an insurer like Guardian.

**{47}** In contrast to the inconsistency between cases interpreting § 1132(d), the United States Supreme Court has spoken clearly that state judgment enforcement mechanisms do not violate ERISA's preemption provision. In *Mackey,* the Supreme Court held that while garnishment of ERISA benefits affects and involves ERISA plans, it is a state judgment enforcement mechanism that does not "relate to" an ERISA plan for preemption purposes. *Mackey*, 486 U.S. at 834. The *Mackey* court held that "state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." *Id.* Guardian's approach would have this Court endorse the paradoxical result of rendering unenforceable legitimate judgments against insured ERISA plans, an approach entirely at odds with Congressional intent.[3] *Id.* at 831 (indicating that "Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans"). We conclude that ERISA does not preempt or preclude a state law garnishment action against an ERISA insurer to enforce a judgment entered against an ERISA plan.

**{48}** Our conclusion today also follows closely upon the direction of the federal district

---

[3]As further evidence of Congressional intent not to preempt state judgment enforcement mechanisms affecting welfare benefit plans, we note that Congress *did* explicitly preempt such mechanisms with respect to *pension* benefit plans. *See* § 1056(d)(1) ("benefits provided under the plan may not be assigned or alienated"). Section 1056 is evidence that where Congress intended to preempt state judgment enforcement mechanisms under ERISA, it did so explicitly. *See Mackey*, 486 U.S. at 836-38.

court in this very matter. Seeking to collect its judgment against the Plan, Kirby went to federal court to assert a new claim against Guardian for wrongful denial of benefits under ERISA, § 1132(a)(1)(B), based on Guardian's refusal to pay the default judgment. Kirby also asserted an additional claim against Guardian for breach of fiduciary duty under ERISA, § 1132(a)(3). The federal court rejected Kirby's claims on a simple, practical ground. Since both claims arose out of Guardian's failure to pay the default judgment, appropriate relief could be found in state court by way of a garden-variety judgment enforcement action under state law. *Kirby-Federal*, slip op. at 15-25.

**{49}** Specifically, with regard to the claim for wrongful denial of benefits, the federal court stated: "[A]lthough the terms of the Plan related to whether Guardian should pay benefits on behalf of the Plan will be at issue [in the state judgment enforcement action], it is a collection and enforcement issue that only the state court can resolve." *Id.* at 18. With regard to Kirby's claim for breach of fiduciary duty, the federal court ruled that, while reinstatement of benefits *would* qualify as "equitable relief" under ERISA, such relief would be inappropriate because state enforcement of the default judgment would provide adequate alternative relief. *Id.* at 24. The federal court thus deferred to New Mexico state law for a method of enforcing the judgment against the Plan. In doing so, the federal court acknowledged that the terms of the Plan would be at issue, and to some extent ERISA law, but did not find such incidental inquiry to raise preemption concerns. Thus, in issuing the writ of garnishment our district court was, in a certain sense, simply following the very course that the federal court had previously described for Ms. Kirby to follow.

**{50}** Our garnishment statute requires an evaluation of the judgment debtor's right of action against the garnishee. In the context of an ERISA plan arrangement, this determination will inevitably involve the terms of the plan document, and will affect the parties to the plan arrangement. Nevertheless, as a part of our state's garnishment analysis, that determination does not involve or upset the comprehensive enforcement scheme of ERISA, § 1132. As one federal district court opinion explains, "[i]n order for pre-emption to even come into play, there must be some express or implied provision of ERISA which addresses the matter." *Local Union 212 Int'l Bhd. of Elec. Workers Vacation Trust Fund v. Local 212 IBEW Credit Union*, 549 F. Supp. 1299, 1302 (D. Ohio 1982). Both *Mackey* and *Kirby-Federal* make clear that judgment enforcement mechanisms, and garnishment in particular, are *not* addressed under ERISA. We agree, and in proceeding to apply state garnishment law, we see ourselves acting in harmony with what the federal court has already said about the role of state courts and state law in the enforcement of ERISA judgments.

2. **Guardian's present refusal to pay benefits provides the Plan a valid right of action against Guardian for breach of the Policy.**

a. **The Plan's right of action.**

**{51}** Guardian is bound by the terms of its Policy, which obligate it to pay benefits when disability is determined. Under the Policy, Guardian must pay benefits upon its own

15

determination of the beneficiary's eligibility. The Policy also incorporates by reference all rights afforded beneficiaries under ERISA, which include administrative and judicial review of a denial by Guardian of a beneficiary's claim for benefits. Under ERISA, a beneficiary obtains judicial review, as Kirby has done here, by filing a claim for wrongful denial of benefits under § 1132(a)(1)(B). *See Kirby-Federal*, slip op. at 24 ("Section 1132(a)(1)(B), coupled with state court judgment enforcement mechanisms, provide [Kirby] with adequate relief for her claim."). The result of a judicial determination of eligibility, then, is to replace Guardian's decision to deny benefits, thereby triggering Guardian's obligation to pay benefits in accordance with the Policy.

**{52}** We have reviewed the Policy, and it leaves no ambiguity as to the entity charged with making disability payments, and the circumstances triggering that obligation. Kirby properly sued the Plan for wrongful denial of benefits under § 1132(a)(1)(B), and the result of that litigation was a valid default judgment in Kirby's favor. The time is long past to set aside the default judgment. Guardian correctly points out that this judgment was entered against the Plan, not Guardian. But the Policy imposes an obligation upon Guardian alone to make disability payments when the insurer or a court determines that a beneficiary is eligible under the terms of the Policy. That obligation gives rise to a legal right in the Plan to compel Guardian to make disability payments improperly denied. It is that right of action of the Plan against Guardian that Kirby is entitled to garnish.

**{53}** While Guardian's assets are not assets of the Plan, Guardian's legal obligation to pay benefits under the Policy *is* an asset of the Plan; indeed it is the *only* asset of the Plan. *See Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 910 (D.N.J. 1992) ("It is well established that an insurance contract issued to a plan is itself an asset of the plan, even if the assets invested with the insurance company are not."). That legal obligation, like all legal obligations, includes consequences for its violation. The consequence of Guardian's noncompliance with the terms of the Policy is that the Plan has a valid right of action against Guardian for the liability the Plan has incurred as a result.

**b.      Liability flows to the Plan.**

**{54}** We are not persuaded that it should make any difference whether the benefits from the insurer flow to the Plan or directly to Kirby, the intended beneficiary. Below, Kirby argued by analogy that the Policy was similar to a liability insurance policy, which undoubtedly can be garnished by a judgment creditor. The Court of Appeals rejected this argument, noting a fundamental difference between liability policies and ERISA disability policies. *Kirby II*, 2008-NMCA-154, ¶ 8. The Court went on to explain that, regardless of Guardian's obligation under the Policy, the Policy requires payment of benefits directly to the beneficiaries on behalf of the Plan. *Id*. ¶ 10. Since the Plan is not entitled to a direct payment under the Policy, the Court of Appeals reasoned, there is nothing to garnish. *Id.*

**{55}** The problem with the Court of Appeals analysis is that it focuses on the flow of payments under the Policy, instead of focusing on the rights of action that exist for non-

16

payment. Here, the Plan remains liable to Kirby, notwithstanding Guardian's contractual obligation to pay benefits upon a judicial determination of eligibility. Thus, the Plan's right of action is one resulting from Guardian's breach of the Policy. Instead of focusing on the flow of payments, the Court of Appeals should have focused on the flow of contractual obligations under the Policy, because any garnishable right of action arises out of those obligations.

{56} The same analysis applies in every garnishment action. For instance, garnishment of wages by a third party is nothing more than garnishment of the employee's right of action against the employer for payment of these wages under the employment contract. Under a garnishment statute similar to our own, the Colorado Supreme Court observed that "[f]uture earnings are contingent because they depend upon future performance. The employee cannot sue his employer for wages due before the employee has fulfilled his employment contract." *Olson v. Stone (In re Stone)*, 573 P.2d 98, 100 (Colo. 1977) (en banc) (Groves, J., concurring in result, Carrigan, J., not participating). Similarly in the liability insurance context,[4] if a liability insurer does not pay an injured third party in accordance with the terms of its insurance policy with the insured, the third party can obtain a judgment directly against the insured, at which point the insured would have a right of action against his insurer for breach of the policy. The injured third party can garnish that right of action in a suit against the insurer. *See* 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 232:199 (3d ed. 2000) ("Distinct from the liability of the insurer on its contract of insurance is the liability which may arise by virtue of its breach of that contract, the insured's claim against the insurer for such breach being subject to attachment.").

{57} The default judgment against the Plan was specifically for wrongful denial of benefits, triggering Guardian's obligation to pay benefits under the terms of the Policy. Guardian's continuing refusal to comply with the terms of the Policy is entirely responsible for the Plan's remaining liability to Kirby.

**B.    The Plan's right of action against Guardian is not subject to any contingency, and Guardian's defense of *res judicata* lacks merit.**

**1.    The Plan's right of action is mature.**

{58} As previously discussed, in order to be garnishable the right of the judgment debtor against the garnishee must be mature, not contingent. Here, there is no future event that could change the terms of the Policy or upset the findings of the default judgment. Indeed,

---

[4]Despite invitation from the parties, our analysis of the availability of garnishment in this case does not turn on whether the Policy is one of liability or indemnity insurance. Strictly speaking, it is neither. The unique relationship between the parties in the ERISA plan arrangement, as well as the comprehensive body of ERISA law governing ERISA plans, precludes rigid application of general insurance law principles.

17

the Court of Appeals prefaced its analysis by stating,

> The parties do not frame their arguments so as to allege or deny the existence of a genuine issue of material fact; rather, the question presented focuses on the propriety of the district court's application of our garnishment law . . . . We therefore focus exclusively on . . . whether Plaintiff is "entitled to a judgment as a matter of law."

*Kirby II*, 2008-NMCA-154, ¶ 7. If Guardian is liable to the Plan for breaching the Policy, it is liable immediately. The district court made the determination that Guardian was liable as a matter of law, and we affirm its conclusion. Thus, Guardian's liability to the Plan for breaching the terms of the Policy is currently owing and payable. The only remaining question is whether Guardian's defense of *res judicata* defeats the Plan's right of action.

## 2.      Guardian's *res judicata* defense lacks merit.

**{59}**      Throughout most of this litigation Guardian has proceeded on a central theory that, because it was dismissed from Kirby's initial claim for wrongful denial of benefits, *res judicata* (claim preclusion) bars any claim for benefits that Kirby may ultimately seek to recover from Guardian. Our Court of Appeals in *Kirby II* agreed, viewing any attempt to enforce Guardian's obligations under the Policy as an action that Kirby could have originally brought directly against Guardian. 2008-NMCA-154, ¶ 13. The *Kirby II* court found support for this position in New Mexico case law holding that "'a dismissal with prejudice is an adjudication *on the merits* for purposes of *res judicata*.'" *Id.* (quoting *Hope Cmty. Ditch Ass'n v. N.M. State Eng'r*, 2005-NMCA-002, ¶ 10, 136 N.M. 761, 105 P.3d 314) (emphasis added).

**{60}**      Both Guardian and the Court of Appeals interpret this proposition of law to mean that Guardian can never be liable for paying a money judgment on Kirby's claim for benefits, because the merits of Kirby's claim have been effectively decided in Guardian's favor. If this were true, it would make discussion of garnishment irrelevant, because Guardian would be shielded from any action that would cause it to pay under the Policy. In our view, however, Guardian misapplies the principles which animate *res judicata* theory.

**{61}**      "*Res judicata* bars not only claims that were raised in the prior proceeding, but also claims that could have been raised." *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 14, 131 N.M. 537, 40 P.3d 442 (filed Dec. 14, 2001). "*Res judicata* precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Id. (citing Myers v. Olson*, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984)). The party asserting *res judicata* must satisfy the following four requirements: "'(1) [t]he parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits.'" *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816 (quoting *Bennett v. Kisluk*, 112 N.M. 221, 225, 814 P.2d 89, 93 (1991)). Whether the elements of

claim preclusion are satisfied is a legal question, which we review de novo. *Blea v. Sandoval*, 107 N.M. 554, 557, 761 P.2d 432, 435 (Ct. App. 1988) (effect of prior judgment "is a legal question that does not require a review of the facts"). As we discuss below, *res judicata* is founded on principles of fairness and justice.

**{62}** In the present action, *res judicata* is not a bar because the two claims against Guardian are not the same and could not have been brought in the same proceeding. *Roybal v. Lujan de la Fuente*, 2009-NMCA-114, ¶ 25, 147 N.M. 193, 218 P.3d 879 (2009). The initial dismissals of Guardian with prejudice were final and on the merits for *res judicata* purposes, and Guardian argues that the present action is a collateral attempt by Kirby to recover the same benefits that were disallowed in the earlier litigation. Indeed, Kirby *is* seeking to recover the same benefits from the Plan that she once sought to recover directly from Guardian. Yet, there is no escaping the fact that the present cause of action against Guardian is for enforcement of a writ of garnishment—not for wrongful denial of benefits, or insurer bad faith, or any of the other causes of actions precluded by Guardian's initial dismissal.

**{63}** Focusing on the subject matter giving rise to each claim, we conclude that the two claims arose from different transactions. Under *Bank of Santa Fe*, one factor required for a showing that two claims are the same is "the relatedness of the facts in time, space, origin, or motivation." 2002-NMCA-014, ¶ 16 (internal quotation marks and citation omitted). Guardian's initial decision to deny benefits was based on its conclusion that Kirby was ineligible under the Policy, and Kirby's initial claims against Guardian (which were ultimately dismissed with prejudice) were motivated by that decision. In contrast, the present garnishment action was motivated by the Plan's failure to satisfy the default judgment award, which, as far as we can surmise from the record, was due to its lack of liquid assets. Thus, the subject matter giving rise to the two actions concern entirely distinct motivations, and are separated by nearly a decade. The garnishment action could *not* have been brought against Guardian at the same time as the claims that were dismissed, because the Plan was years away from the judgment that would establish its liability to Kirby. *See id.* ¶ 14. One is not required to join an enforcement claim against a garnishee in the underlying litigation to establish liability.

**{64}** Even if we were to construe the present action as a collateral attempt at redress for wrongful denial of benefits, it would be based on a new transaction: Guardian's breach of the Policy by refusing to pay benefits once the district court determined, by default judgment, that Kirby was disabled. The *Kirby-Federal* court addressed this very point:

> At the time the state court determined that [Kirby] was entitled to long-term disability benefits under the Plan, Guardian became aware that [Kirby] was a beneficiary of the Plan and was entitled to recover benefits. Guardian's failure to pay benefits after the state court's determination that [Kirby] was a beneficiary under the terms of the Plan is a new cause of action because Guardian committed a new breach of the terms of the Plan. This new cause

19

of action originated at a different time and based on a new set of facts: that [Kirby] has been judicially determined eligible for benefits and that the Plan and [Guardian] are ignoring the judgment ordering the payment of Plaintiff's benefits.

*Kirby-Federal*, slip op. at 14. We agree with the federal district court's analysis on this point. As such, the present litigation is, for purposes of the "same claim" requirement of *res judicata*, twice removed from the judgments that actually have any preclusive effect.

**{65}** *Res judicata* is a judicial creation ultimately intended to serve the interests of justice. To interpret and enforce our *res judicata* doctrine as Guardian urges would have the opposite result. In *Computer One, Inc. v. Grisham & Lawless P.A.,* we observed that the underlying purpose of *res judicata* is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, . . . prevent[] inconsistent decisions, [and to] encourage reliance on adjudication." 2008-NMSC-038, ¶ 31, 144 N.M. 424, 188 P.3d 1175 (internal quotation marks and citations omitted). Certainly, considerable judicial resources have been devoted to this dispute, and no doubt both sides have incurred substantial expense. Still, the interests of justice are hardly served by using *res judicata* to render a valid judgment meaningless—and to strip a disabled employee of her entitlement to benefits— especially where the guidelines for pursuing an ERISA claim can be so obtuse to the average claimant.

**{66}** For as long as Guardian has been asserting *res judicata* to bar Kirby's recovery, it has referred to its earlier dismissals as judicial determinations "on the merits." Although the language of our cases may be read literally to mean that a dismissal with prejudice is "*an adjudication on the merits," see Hope Cmty. Ditch Ass'n*, 2005-NMCA-002, ¶ 10 (emphasis added), such a reading would be a distortion in this case. A dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the fourth element of *res judicata* (a final valid judgment *on the merits)* will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction. If this were otherwise, plaintiffs could simply ignore dismissals and file the same claim as many times as they wished, so long as the claim never progressed to a determination of the substantive issues.

**{67}** The initial judgments that Guardian claims to have been "on the merits" did *not* include a judicial determination of Kirby's eligibility. The only judgment involving the issue of disability was the default judgment in Kirby's favor. Her attempt to enforce that judgment against Guardian, the party who contracted for the very responsibility to make disability payments to employees like Kirby, hardly offends the interests of justice that the doctrine of *res judicata* was designed to serve.

**{68}** Finally, we acknowledge Guardian's point that garnishment will serve to impose a liability upon Guardian that Kirby could not have secured in a direct action, and that this liability is the result of proceedings to which Guardian was not party. In its brief to the Court of Appeals, Guardian argued that the district court ruling failed to treat it as an

20

"innocent third party," and that requiring Guardian to pay the default judgment violated its Due Process rights. However, the "innocent third party" concept simply means that if the garnishee *is* ordered to turn over the subject of garnishment, its liability will be no greater to the garnishor than it would otherwise be to the judgment debtor in a direct action. *See Jemko*, 106 N.M. at 54, 738 P.2d at 927. Our Opinion today has emphatically adhered to this principle.

**{69}** Having made the initial decision (in good faith, we presume) to deny Kirby benefits, we do not fault Guardian for insisting that Kirby satisfy procedural and substantive requirements for a judicial review of that decision. Nevertheless, Guardian was well aware that, following its loss before the Court of Appeals in *Kirby I*, the district court would adjudicate the substance of Kirby's disability claim, and yet Guardian elected not to participate. Guardian should also have been aware of the possibility that Kirby might ultimately seek to enforce any favorable judgment against Guardian based upon Guardian's commitments under the Policy. *See Pecor v. Nw. Nat'l Ins. Co.*, 869 F. Supp. 651, 653 n.2 (E.D.Wis. 1994) ("When [entity] act[ing] in its capacity as plan administrator, it steps into the shoes of the Plan, and is subject to any court orders restraining or directing the Plan's actions.").

**{70}** Although it was not required to attend the proceedings, as fiduciary and insurer Guardian had every incentive to participate in the hearing along with the Plan and justify its decision to deny benefits, especially since its *res judicata* defense would have had the same force in a subsequent enforcement action, regardless of the outcome. *See* Rule 1-008(E)(2) NMRA; *see also Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003) (ERISA fiduciary's duty of loyalty requires it to act as a prudent person, "for the exclusive purpose" of providing benefits to plan beneficiaries. (Internal quotation marks and citation omitted.)). By not attending, Guardian gave up its opportunity to contest Kirby's eligibility, relying thereafter entirely on *res judicata* to bar enforcement of the default judgment.

**{71}** Once Kirby secured the writ of garnishment, all due process required was that Guardian be given notice and the opportunity to explain why it should not be held responsible for the default judgment. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *see also Moya v. DeBaca*, 286 F. Supp. 606, 608 (D.N.M. 1968) (stating judgment debtor is given notice and hearing at underlying proceeding, garnishee is given notice and hearing at garnishment proceeding). Guardian has had the opportunity to argue its *res judicata* defense—and has done so vigorously—in this Court and both courts below. For the reasons previously set forth by the federal district court on this precise issue, as well as those discussed herein, we conclude that Guardian's wholesale reliance on *res judicata* was misguided.

**IV.     Attorney's Fees and Costs**

21

**{72}** We have explained that the default judgment outlining the Plan's liability cannot be revisited, but it does not necessarily follow that Kirby may recover the entire amount of the Plan's liability from Guardian by way of garnishment. Our holding today, that the Plan has a garnishable right of action against Guardian, affirms that part of the district court judgment ordering Guardian to reinstate and pay disability payments in accordance with the default judgment, because its obligation to do so is clearly mandated by the terms of the Policy. However, while the Policy mentions the possibility of recovering attorney's fees and costs if a beneficiary is successful in a suit under ERISA, that section of the Policy merely incorporates rights provided for under ERISA; it does not constitute an independent promise to pay such fees and costs. ERISA, § 1132(g)(1), in turn, states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

**{73}** On remand, the Court of Appeals will need to review the extensive federal authority in this area of the law to determine whether the full amount of the December 2, 2004, Award of Attorney's Fees and Costs can be assessed against Guardian. The court will need to evaluate the Plan's right of action against Guardian for the amount assessed in that award, in the same manner that we have evaluated the Plan's right of action for the full amount of disability payments here. We stress that Kirby can only recover through garnishment what the Plan would be able to recover against Guardian in its own direct action. *See Jemko*, 106 N.M. at 51-54, 738 P.2d at 924-27.

**CONCLUSION**

**{74}** We reverse the ruling of the Court of Appeals. We affirm the district court in part, ordering Guardian to reinstate Kirby's benefits and to pay all benefits it has denied in accordance with the November 16, 2004, default judgment. We remand to the Court of Appeals to resolve the remaining issue of attorney's fees and costs consistent with this Opinion.

**{75}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _Kirby v. Guardian Life Insurance Company of America_, No. 31,329**

| | |
|---|---|
| **AY** | **AGENCY** |
| AY-FD | Fiduciary Duty |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-AG | Appeal and Error, General |
| AE-JR | Judicial Review |
| AE-RM | Remand |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-AU | Actions and Defenses |
| CP-AR | Affirmative Claims and Defenses |
| CP-CS | Causes of Action |
| CP-CL | Conflict of Laws |
| CP-DJ | Default Judgment |
| CP-DS | Dismissal |
| CP-DP | Due Process |
| CP-RJ | Res Judicata |
| CP-TA | Third-party Actions |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **CN** | **CONTRACTS** |
| CN-TB | Third Party Beneficiaries |
| CN-BR | Breach |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-DB | Disability |
| EL-ER | ERISA |
| EL-RD | Reinstatement and Damages |
| | |
| **FL** | **FEDERAL LAW** |
| FL-AF | Attorney's Fees |
| FL-FJ | Federal Jurisdiction |
| FL-PE | Preemption |
| | |
| **IN** | **INSURANCE** |
| IN-DI | Disability Insurance |

| | |
|---|---|
| IN-GL | General Liability Insurance |
| IN-IC | Insurance Contract |
| | |
| **JM** | **JUDGMENT** |
| JM-DF | Default Judgment |
| JM-EJ | Execution of Judgment |
| | |
| **JD** | **JURISDICTION** |
| JD-FJ | Federal Jurisdiction |
| JD-SM | Subject Matter Jurisdiction |
| | |
| **RE** | **REMEDIES** |
| RE-AT | Attachment |
| RE-ET | Execution |
| RE-GR | Garnishment |
| RE-SB | Subrogation |
| | |
| **ST** | **STATUTES** |
| ST-AP | Applicability |
| ST-CS | Conflicting Statutes |